**UNITED STATES of America, Appellee,**

v.

**Chuck Patrick NEWMANN, Appellant.**

**No. 72-1684.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1973.

Decided May 31, 1973.

Larry B. Leventhal, Minneapolis, Minn., for appellant.

Thorwald Anderson, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MEHAFFY, BRIGHT and ROSS, Circuit Judges.

MEHAFFY, Circuit Judge.

We anticipate with the war's end that possibly there will be more cases similar to this, some with merit and others without, so each case seems to deserve its own careful consideration to assure its proper disposition predicated on the individual facts.

This case is a direct criminal appeal from a conviction for failure to report for induction in violation of the Military Selective Service Act of 1967, 50 U.S.C. App. § 462. In the district court defendant waived his right to a jury trial and conceded his failure to report. The sole basis of the defense was that the order to report for induction was illegal.

The district court held that it could not consider this defense because the defendant had failed to exhaust his administrative remedies. United States v. Newmann, No. 4-71 CR. 255 (D.Minn. July 18, 1972). We have concluded that

the district court erred in barring the defense and that the judgment of conviction must be reversed.

The relevant facts in this case are simple and undisputed. Shortly after his eighteenth birthday defendant registered with Selective Service System Local Board No. 51 in Hennepin County, Minnesota. For approximately two years defendant attended college under a II–S classification student deferment. On March 17, 1970 defendant was granted a I–S(c) classification, which was a limited student deferment designed to allow defendant to complete the semester of study in which he was then engaged. Defendant's I–S(c) classification was scheduled to expire in September 1970. On September 2, 1970 defendant filed a timely request for conscientious objector status and he was sent SSS Form 150 to pursue this application. On October 6, 1970 defendant returned the completed SSS Form 150. Two weeks later, on October 20, 1970, Local Board No. 51 classified defendant I–A. Although the action of the Local Board in classifying defendant I–A presumably included a consideration and rejection of defendant's recently filed claim for conscientious objector status, the Board never made a statement of reasons explaining why the conscientious objector request had been denied. On October 23, 1970 defendant was sent the standard SSS Form 110 and Form 217, which notified defendant that the Board had classified him I–A and that he had a right to appeal within thirty days. Neither form made any reference to the basis of the Board's decision or to the fact that defendant's conscientious objector application had been considered. Defendant made no effort to appeal his I–A classification within the thirty-day limit. On November 25, 1970 defendant was ordered to report for induction. Shortly thereafter defendant initiated a determined, but unsuccessful, effort to have the denial of his conscientious objector claim reviewed administratively. On December 17, 1970, the date he was ordered for induction, defendant failed to report.

Defendant seeks to excuse his failure to appeal within the thirty-day limit on the ground that he did not realize the Board's decision to reclassify him I–A on October 20, 1970 was a rejection of his conscientious objector application. Defendant testified that he felt this reclassification was merely an automatic action that resulted from the expiration of his student deferment and that his conscientious objector application would be considered at some later date. Defendant stated that he was aware of his right to appeal the October 20th I–A classification but at the time he received the notice of classification he felt the only grounds for appeal would be that he was entitled to an extension of his student deferment. Since defendant was no longer in school he clearly was not entitled to an extension of the student deferment.

The evidence introduced by the government in no way contradicts defendant's testimony. The government's own witness on direct examination testified that the Local Board's October meetings always include a large number of automatic I–A reclassifications that resulted from expiring student deferments. The government's witnesses and exhibits corroborate defendant's testimony that he received no direct indication that his conscientious objector application had been denied until after his right to appeal had expired. Finally the government's witnesses and exhibits agree that defendant made every reasonable effort to obtain a discretionary administrative review of his file after his right to appeal had expired.

■■ From the state of the record outlined above it is clear that defendant failed to pursue any of the administrative appeal procedures that were available to him as a matter of right. Normally a failure to exhaust administrative remedies will foreclose any subsequent judicial review of the validity of a registrant's classification. *E. g.*, United States v. McBride, 468 F.2d 567 (8th Cir. 1972). It has long been established, however, that the exhaustion doctrine

is not an automatic and absolute bar to any attack on the validity of a registrant's classification. As early as Glover v. United States, 286 F.2d 84 (8th Cir. 1961), we recognized that "exceptional circumstances" might justify a relaxation of the normal exhaustion requirement. The necessity of relaxing the exhaustion requirement under "exceptional circumstances" has also been recognized in other circuits. E. g., United States v. Rabe, 466 F.2d 783 (7th Cir. 1972); United States v. Davis, 413 F.2d 148 (4th Cir. 1969); Donato v. United States, 302 F.2d 468 (9th Cir. 1962). The difficulty with the "exceptional circumstances" rationale has been that, until recently, there has been no clear guidance from the Supreme Court identifying the factors that should be considered in deciding whether or not to relax the exhaustion requirement in a particular case. This guidance has now been supplied by the Court's decisions in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) and McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

In both McKart and McGee the majority opinions refrained entirely from using the "exceptional circumstances" language that had become common in the lower federal courts. Instead, the Court utilized a balancing test which weighed the interests of the registrant against three specified governmental interests in requiring exhaustion. The three governmental interests in requiring exhaustion identified by the Court are: (a) the agency's interest in having an opportunity to make a factual record and exercise its discretion and expertise without the threat of litigious interruption; (b) the agency's interest in discouraging frequent and deliberate flouting of the administrative process; and (c) the agency's interest in correcting its own mistakes and thereby obviating unnecessary judicial proceedings. The procedure used by the Court in McKart and McGee in this balancing process was to analyze the governmental interests to determine whether they were "compel-

ling enough to outweigh the severe burden placed on [the registrant]" when he is denied judicial review of allegedly illegal agency actions. McKart v. United States, 395 U.S. at 197, 89 S.Ct. at 1665; McGee v. United States, 402 U.S. at 485, 91 S.Ct. 1565. In McKart the central issue was one of statutory interpretation and the Court concluded that the governmental interests were not compelling enough to require forfeiture of McKart's defense. In McGee the agency's interests in fact finding and exercising its expertise were threatened by the registrant's deliberate refusal to participate in the administrative process, and the Court concluded that the necessity to protect the integrity of the Selective Service System compelled a foreclosure of judicial review.

Applying the principles of McKart and McGee to this case, it is clear that the government has completely failed to show any interest compelling enough to justify a forfeiture of judicial inquiry into the validity of defendant's classification. Local Board No. 51 refused all of the defendant's offers to enlarge the factual record. There was no litigious interruption of the Board's opportunities to exercise its discretion and expertise. Indeed, the inadequacy of the Board's own actions in exercising its expertise and discretion is the basis of the registrant's defense. There is no agency interest in time-saving self-correction suggested in this case because the Local Board and the State Director consistently refused defendant's repeated requests to have his file reopened for just such a correction process. Finally, there is nothing in this case that would encourage frequent and deliberate flouting of the administrative process by others. The record is uncontradicted that defendant's failure to appeal within thirty days was due solely to his lack of information about the Board's decision and the consequences of his failure to appeal. The government concedes that as soon as defendant learned that his conscientious objector application had

been denied he made every effort to have that decision reviewed administratively.

We hold, therefore, that the government has failed to demonstrate any interests compelling enough to justify foreclosure of judicial review. Furthermore, we find that there is no dispute over the fact that defendant has presented a valid defense under our recent holding in United States v. Hanson, 460 F.2d 337 (8th Cir. 1972).

We therefore reverse the judgment of the district court and remand the case for entry of a judgment of acquittal.