**Lawrence S. WAGLE, Plaintiff-Appellant,**

**v.**

**H. Max MURRAY, as Principal of the R. A. Long High School, et al., Defendants-Appellees.**

**No. 73–2066.**

United States Court of Appeals, Ninth Circuit.

Nov. 10, 1976.

As Modified on Denial of Rehearing Jan. 19, 1977.

**1330**

Jerry D. Anker (argued), Washington, D. C., for plaintiff-appellant.

Alvin A. Anderson (argued), Tacoma, Wash., for defendants-appellees.

Before BROWNING and CHOY, Circuit Judges, and WEIGEL,* District Judge.

BROWNING, Circuit Judge.

Appellant brought this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, against the principal of R. A. Long High School, Longview, Washington, the superintendent and members of the board of directors of the Longview School District, and the school district itself.[1] He alleged that appellees terminated his employment as a history teacher at the high school because of his exercise of his First Amendment right of free speech, and in violation of his Fourteenth Amendment right to procedural due process. He sought reinstatement, back pay, damages, attorneys' fees, and costs.

The jury awarded appellant $50,000. The district court granted appellees' motions for judgment notwithstanding the verdict on the grounds that (1) appellant failed to exhaust his administrative remedies and (2) there was no evidence that appellant was terminated for exercising his First Amendment rights or that appellees acted in bad faith. The district court also denied appellant's motion for equitable relief. This appeal followed.

Four issues are raised: (1) whether appellant's claim is barred because he failed to exhaust administrative remedies; (2) whether the jury's verdict lacked support in the evidence; (3) whether, if the judgment

---

* Honorable Stanley A. Weigel, United States District Judge, Northern District of California, sitting by designation.

1. All of the individual defendants were sued in both their individual and official capacities.

notwithstanding the verdict is reversed, appellees are entitled to a new trial; and (4) whether appellant was entitled to equitable relief.

### 1. *Exhaustion of Administrative Remedies*

■ Washington law provides that if the board of directors of a school district determines there is "probable cause" not to renew a teacher's contract for the next school term, the board shall notify the teacher by April 15, specifying the cause for nonrenewal.[2] Within ten days after receiving the notice of nonrenewal the teacher may request a hearing before the board,[3] or file an appeal to the state superior court.[4] If a hearing is held before the board, the board shall notify the teacher "of its final decision to renew or not renew" the employment contract within ten days after the hearing is concluded.[5] If the teacher does not request a hearing before the board (or file an appeal in the superior court) within the time allowed, the decision of the board not to renew becomes final and conclusive. *Robel v. Highline School District,* 65 Wash.2d 477, 485, 398 P.2d 1, 6 (1965); *State ex rel. Bohanon v. Wanamaker,* 47 Wash.2d 794, 803, 289 P.2d 697, 701–02 (1955).

On April 1, 1970, the school board sent appellant a "resolution of non-renewal," asserting "probable cause for non-renewal" on listed grounds. The notice did not inform appellant that he had ten days to request a hearing or file suit. Appellant testified that he knew of his statutory rights to request a hearing, but thought he had 30 days within which to act.[6] He further testified that he learned of the deadline from another teacher on Friday, April 10, the ninth day of the statutory ten-day period. On the same day, appellant delivered a note to the school personnel officer reading, "The non-renewal of my contract was, as you know, illegal. There will accordingly be a legal challenge to the decision of the school board." On the following Monday, apparently two days after the ten-day period had run,[7] appellant contacted his attorney, and, on the attorney's advice, delivered another note to the school personnel officer, reading, "I have already indicated that there would be a challenge to my illegal dismissal. At what time would it be possible to obtain a hearing with the school board?"

The secretary of the board wrote to appellant in response to both letters. The secretary stated that appellant's first note was not a request for a hearing, that his second note was not timely under the statute, and that neither note was addressed to the "chairman or secretary" of the board as the statute required. The secretary's letter concluded, "[T]he Board of Education may not waive or alter statutory requirements. The Board therefore cannot grant you a hearing on the non-renewal of your contract."

The district court agreed with the school board that appellant's two notes did not

---

2. Rev.Code Wash. § 28A.67.070.

3. *Id.*

4. Rev.Code Wash. § 28A.58.515.

5. Rev.Code Wash. § 28A.67.070.

6. Appellant's confusion is understandable in view of Rev.Code Wash. § 28A.58.460 (former § 28.58.460), which provides:

 Any teacher . . . desiring to appeal from . . . [a] failure to renew that employee's contract for the next ensuing term, within thirty days after his or her receipt of such decision or order, may serve upon the chairman of the school board and file with the clerk of the superior court . . . a notice of appeal which shall set forth also in

a clear and concise manner the errors complained of.

The parties apparently agree that this 30-day time limit applies to an appeal to the superior court from the final decision of the board, as distinguished from review of the board's initial determination of probable cause. The distinction would hardly be obvious to a layman, particularly in this case where the notice served upon appellant after reciting the finding of probable cause went on to state "that the contract of Lawrence S. Wagle shall not be renewed for the 1970–71 school year."

7. Saturdays and Sundays are apparently included in the statutory 10-day period. Rev. Code Wash. § 1.12.040.

satisfy the requirements of the Washington statute. For this reason the court concluded that appellant had failed to exhaust his administrative remedy under the statute, and that this failure "was fatal to his action under § 1983."

█ It is a general rule that a litigant must exhaust available and adequate state administrative remedies before seeking relief in federal courts.[8] Generally, suits under the Civil Rights Act are excepted from the rule because the remedy afforded by the Act "is supplementary to the state remedy." *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).[9] Appellees argue, however, that the present case is governed by decisions of this court which hold that in some circumstances the exhaustion rule does apply to actions under the Civil Rights Act. *See Whitner v. Davis,* 410 F.2d 24 (9th Cir. 1969); *Toney v. Reagan,* 467 F.2d 953 (9th Cir. 1972); *Bignall v. North Idaho College,* 538 F.2d 243 (9th Cir. 1976).[10]

The exhaustion rule is not to be "woodenly" applied. *Morgan v. LaVallee,* 526 F.2d 221, 223 (2d Cir. 1975). "Application of the rule is not jurisdictional, but calls for the sound exercise of judicial discretion." *Kale v. United States,* 489 F.2d 449, 454 (9th Cir. 1973).[11] Even in those areas of the law in which exhaustion of administrative remedies is generally required, judicial review will not be denied for failure to exhaust such remedies unless, on balance, the interests served by requiring exhaustion outweigh the injury the complainant would suffer if exhaustion were required. *McKart v. United States,* 395 U.S. 185, 197, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *McGee v. United States,* 402 U.S. 479, 484, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971); *United States v. Newmann,* 478 F.2d 829, 831-32 (8th Cir. 1973).

The damage to appellant would be substantial if his remedy under the Civil Rights Act were withdrawn. The state has denied him any remedy, administrative or judicial. If his federal judicial remedy were also foreclosed, appellant would have no recourse for the termination of his employment and the substantial financial loss he has sustained (allegedly, and as found by the jury) because he exercised rights guaranteed to him by the First Amendment.

Whether the severe burden that would be imposed upon appellant by denying judicial review would be outweighed by the governmental interests at stake depends primarily upon the function served by the particular administrative process and the nature of appellant's default. *McGee v. United States, supra,* 402 U.S. at 484, 91 S.Ct. 1565.

█ If the administrative process serves an important purpose in the scheme established by the state for the resolution of the kind of dispute involved, failure to exhaust the administrative process may seriously affect the interests of the state. If the state

---

**8.** *See, e. g., Eisen v. Eastman,* 421 F.2d 560, 567 & n.11 (2d Cir. 1969); Wright, Federal Courts § 49.

**9.** Other Supreme Court holdings that it is not necessary to exhaust state administrative remedies before filing a § 1983 action include: *McNeese v. Board of Education,* 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Damico v. California,* 389 U.S. 416, 416-17, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *King v. Smith,* 392 U.S. 309, 312 n.4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Houghton v. Shafer,* 392 U.S. 639, 640, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); *Wilwording v. Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Steffel v. Thompson,* 415 U.S. 452, 472-73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Ellis v. Dyson,* 421 U.S. 426, 432-33, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975).

**10.** The Supreme Court has neither approved nor disapproved this court's view. However, the Court has expressly reserved the question whether the non-exhaustion exception applies to a Civil Rights Act claim where "a license revocation proceeding has been brought by the State and is pending before one of its own agencies and where the individual charged is to be deprived of nothing until the completion of that proceeding. . . ." *Gibson v. Berryhill,* 411 U.S. 564, 574-75, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973).

**11.** *See also NLRB v. Industrial Union of Marine Workers,* 391 U.S. 418, 426 n.8, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); *Pence v. Kleppe,* 529 F.2d 135, 143 (9th Cir. 1976), *affirming* 391 F.Supp. 1021 at 1025 n.3.

does not rely heavily upon the administrative process, bypassing that process will have less serious consequences. The present case falls in the second category. Under the Washington statutory scheme, appellant was not required to seek a hearing before the board before appealing to a state court. The Washington statute provides, "In lieu of requesting a hearing before the board of directors . . . an employee may elect to appeal the action of the board directly to the superior court of the county in which the school district is located . . . ." Rev.Code Wash. § 28A.58.515. A state statute also provides that if the employee elects to request a hearing before the board any appeal to the superior court after the board has acted "shall be heard de novo by the superior court." Rev.Code Wash. § 28A.58.480.

This statutory scheme negates the existence of any state interest in requiring exhaustion of the administrative remedy. An aggrieved employee is free to ignore the administrative process entirely.[12] If he elects to use the administrative process, the administrative decision has no significant effect upon subsequent judicial procedures.[13] Washington does not rely upon the administrative process either as a fact-finding mechanism or as a means for developing and applying special administrative expertise. It would be anomalous for the federal courts to attribute a value to the state administrative process the state itself does not.

The minimal state interest in requiring exhaustion is emphasized by the nature of appellant's default. Appellant did not interrupt an on-going administrative proceeding. Nor did appellant deliberately circumvent the administrative process and deny the board an opportunity to develop the facts and correct its own errors. On the contrary, appellant made every effort to obtain a board hearing. He was denied that opportunity because he addressed his request to the wrong official (though the proper official had actual notice and answered his letter), and because he did not file his request within ten days (though he filed a letter protesting the illegality of the nonrenewal on the ninth day—a Friday—and a request for a hearing on the twelfth day—the following Monday—and though he filed late because of an understandable confusion as to the applicable time limits. *See* note 6). There is nothing in this case that will induce the frequent and deliberate flouting of the state administrative process. Moreover, the board did not suggest that appellant's default prejudiced the board in any way. The board denied appellant a hearing only because the board was advised that it was not permitted to "waive or alter statutory requirements."

The state may impose unyielding technical preconditions upon administrative review if it chooses. If the state takes that course, however, it can hardly be said that the state has a compelling interest in seeing that the administrative process is used. *Cf. United States v. Newmann, supra,* 478 F.2d at 831–32. In view of the harsh impact of the exhaustion doctrine when invoked to deny appellant any judicial review of his

---

12. *See District of Columbia v. Brady,* 109 U.S. App.D.C. 324, 288 F.2d 108, 110 (1960) (in banc) (exhaustion is not required where the administrative remedy is an alternative remedy).

13. Rev.Code Wash § 28A.58.480 states that any appeal from the administrative proceeding to the superior court "shall be heard de novo by the superior court." The state supreme court has held this provision to mean that "the trial court's determination must be made independent of any conclusion by the school board, and is to be based solely upon the evidence and testimony which the trial court receives." *Hattrick v. North Kitsap School Dist.,* 81 Wash.2d 668, 670–71, 504 P.2d 302, 303 (1972). "[T]he trial court's determination must be its own, unhampered by the findings and conclusions of the school board." *Id.* at 671, 504 P.2d at 303. *See Goodman v. Bethel School Dist. No. 403,* 84 Wash.2d 120, 128, 524 P.2d 918, 923 (1974).

The independent nature of superior court review is in no way undermined by the requirement in Rev.Code Wash. § 28A.58.470 that the school board must file the administrative transcript and exhibits with the superior court. *See Francisco v. Board of Directors,* 85 Wash.2d 575, 583–84 & n.1, 537 P.2d 789, 794 & n.1 (1975).

claim, "an insubstantial procedural default . . . should not shield an invalid order from judicial correction . . . ." *McGee v. United States, supra,* 402 U.S. at 484–85, 91 S.Ct. at 1569.

Although resort to the administrative remedy in the cases relied upon by appellees and in the present case might have forestalled the deprivation, the balance of interests was in other respects quite different. In *Toney v. Reagan, supra,* and *Bignall v. North Idaho College, supra,* the claimant was not denied a remedy. The administrative remedy remained open; the only burden imposed upon the claimant was that he exhaust it before obtaining judicial review. In these cases, as well as in *Whitner v. Davis, supra,* the administrative process performed a crucial fact-finding function; and in all three cases the claimant deliberately sought to avoid and frustrate the administrative process. Moreover, in both *Whitner v. Davis* and *Bignall v. North Idaho College,* the gravamen of the Civil Rights Act complaint was that the administrative process was constitutionally inadequate. Since exhaustion is not required if the administrative remedy is inadequate, the decision of that question by the court resolved the merits of the claim. *Gibson v. Berryhill,* 411 U.S. 564, 574–75, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).[14]

The only interest that might be served by requiring the exhaustion of the state administrative remedy in a case such as this is the interest of the federal court in avoiding additional litigation—as the court would if the underlying dispute were resolved in the administrative process. This consideration is not alone enough to support an exhaustion requirement, as demonstrated by the many cases holding that state judicial remedies need not be exhausted before filing an action under the Civil Rights Act.[15]

Balancing the relevant factors, we conclude that appellant is not barred by failure to exhaust administrative remedies.

2. *Sufficiency of the Evidence*

■ The issue submitted to the jury was whether appellees terminated appellant's employment as a teacher because they disapproved of communications and expressive activities protected by the First Amendment, or because he was an ineffective teacher.[16] There was evidence from which the jury could have inferred either motive. The motion for judgment notwithstanding the verdict was therefore improperly granted. *Cockrum v. Whitney,* 479 F.2d 84, 85 (9th Cir. 1973).

Appellant was employed by the R. A. Long High School in 1962. During the first five years of his service his competency as a teacher was not challenged seriously enough to inspire any suggestion of nonrenewal of his contract. In the fall of 1965 he was elected chairman of the local chapter of the American Civil Liberties Union. In the spring of 1966 he began to challenge long accepted practices at the high school as violative of the separation of church and

---

**14.** This is also true of *Beattie v. Roberts,* 436 F.2d 747 (1st Cir. 1971). (In addition, insofar as it found a general or automatic requirement of administrative exhaustion, *Beattie* was overruled by *Raper v. Lucey,* 488 F.2d 748, 751 n.3 (1st Cir. 1973).)

**15.** *See* cases cited in footnote 9. *See also Canton v. Spokane School Dist. # 81,* 498 F.2d 840, 844 (9th Cir. 1974); *Whitner v. Davis,* 410 F.2d 24, 28 (9th Cir. 1969).

**16.** Appellees do not contend that appellant's expressive activities had a disruptive impact on the school. Rather, appellees argue that these activities did not influence the decision not to renew appellant's contract, except to the extent that they may have interfered with appellant's

teaching. The district court stated the issue for the jury as follows:

Was the plaintiff non-renewed for probable cause because he had become an ineffective teacher, or was plaintiff non-renewed because of his exercise of his constitutionally protected rights of free speech and association?

Although appellant has not challenged the quoted instruction, to avoid possible misunderstanding we note that recent decisions of this court establish that a decision to terminate a teacher's employment is unlawful even if only partially in retaliation for the exercise of constitutional rights. *Mabey v. Reagan,* 537 F.2d 1036, at 1045 (9th Cir. 1976); *Gray v. Union County Intermediate Educ. Dist.,* 520 F.2d 803, 806 (9th Cir. 1975).

state—including holding baccalaureate services at the school and offering prayers at the annual honor society banquet. In October 1967 appellant wrote a letter to the local newspaper expressing his views on the subject. A public controversy ensued which continued into the spring of 1968. Early in the same year, appellant wrote a letter to the local newspaper defending ACLU's position favoring legalization of marihuana. This letter, too, provoked intense public comment, largely critical of appellant. After a year of comparative quiet, it was brought to public attention that appellant had made available to his students a pamphlet titled, "The Student as Nigger," which, in unrestrained language, analogized the student-teacher relationship to a system of slavery.[17] There was evidence that criticism of appellant's effectiveness as a teacher began with the church-state controversy, intensified during the marihuana incident, diminished in the lull preceding the distribution of the pamphlet, recommenced following that distribution, and continued until appellant's termination. There is also evidence that in faculty meetings, exchanges between appellant and the school principal and superintendent, and meetings of the board, appellant's expression of controversial views was linked with his possible dismissal. Finally, there was evidence that appellees were aware of the problem of sustaining a dismissal based upon appellant's communications, and deliberately undertook to "build a record" to support dismissal on other grounds.

From this circumstantial evidence the jury could reasonably infer that appellant's termination was motivated by the public expression of his controversial views.

■ Since there is a reasonable basis for the jury's verdict it could not be set aside even if on the whole record we thought it more likely that appellees discharged appellant because he was an ineffective teacher, as they testified. "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & P. V. Ry.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). Nor is the verdict flawed because it rests, as the trial court put it, "upon guess, speculation, or conjecture." As the Supreme Court said in *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946): "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference." This is particularly true when the issue is motive, as in this case.[18]

---

17. Appellant testified that the pamphlet was authored by Prof. Jerry Farber, a teacher at California State College in Los Angeles, and appeared in an educational journal published in Toronto, Canada, from which the copies distributed by appellant were reproduced.

18. Appellees argue that the district court should have granted appellees' conditional motion for new trial (*see* Fed.R.Civ.P. 50(c)), because the form of verdict submitted to and completed by the jury did not disclose whether appellees acted in bad faith or whether they were found liable in their individual or official capacities.

We reject the argument for three reasons. First, appellees did not object to the form of verdict although appellees' counsel indicated in colloquy with the trial court at a post-trial hearing that he had seen the form of verdict before the case was submitted to the jury. Second, we agree with appellant that under the

instructions as given, the jury could have found appellees liable only if the jury found appellees had acted in bad faith as defined in the instructions; and appellees did not object to the definition of bad faith on any ground relevant here. Finally, bad faith was established as a matter of law since the jury found that appellees failed to renew appellant not "because he had become an ineffective teacher" but "because of his exercise of constitutionally protected rights of free speech and association," (see note 16), and the rights violated were "clearly established constitutional rights." *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The verdict negated the possibility that appellant was not renewed because the manner in which he exercised his First Amendment rights interfered with the effective performance of his duties as a teacher, and as noted earlier (note 16) appellees have not contended that appellant's communicative activities disrupted the school. *See Pickering v.*

### 3. *Remedy*

After the verdict had been received, appellant moved for an order requiring reinstatement and an award of back pay. Obviously, equitable relief was barred by the court's determination that the evidence was insufficient to show that appellant had been terminated in violation of his First Amendment rights. The trial judge added, however, "[e]ven if my conclusions were other than those stated here today, in the exercise of discretion, I would deny the request."

 We recently sustained denial of reinstatement of a teacher discharged under an unconstitutionally vague statute. *Burton v. Cascade School District Union High School No. 5,* 512 F.2d 850 (9th Cir. 1975). The circumstances of that case were unusual. The opinion strongly suggests that the result was influenced by the fact that the teacher's assignment included supervision of sports activities for girls and her dismissal was based upon her admission that she was a "practicing homosexual." We recognized that reinstatement is usually granted in cases involving discharge "aimed at punishing the exercise of free speech." *Id.* at 853 & n.3.[19] The record in this case reflects no special circumstances that would justify denying the usual relief. Accordingly, appellant should be reinstated to his position.

Ordinarily, an award of back pay, diminished by any interim earnings, is an integral part of the remedy of reinstatement.[20] There is some doubt, however, whether the jury may have included back pay in calculating damages. It will be open to the trial court on remand to resolve this issue, and, if it appears that double recovery would otherwise result, to reduce either the award of damages or of back pay.

The district court on remand will also reconsider the denial of attorneys' fees in light of the Civil Rights Attorneys' Fees Awards Act of 1976, P.L. 94–559, 90 Stat. 2641 (October 19, 1976).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

---

*Board of Education,* 391 U.S. 563, 572–73, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). On such a record it is appropriate to sustain the award of damages as to appellees in their individual capacity without remanding for determination of the good faith issue. *Cf. Slate v. McFetridge,* 484 F.2d 1169 (7th Cir. 1973).

19. *See, e. g., Gieringer v. Center School Dist. No. 58,* 477 F.2d 1164, 1167 (8th Cir. 1973); *Johnson v. Branch,* 364 F.2d 177, 182 (4th Cir. 1966); *cf. Keefe v. Geanakos,* 418 F.2d 359, 363 (1st Cir. 1969).

20. *Thomas v. Ward,* 529 F.2d 916, 920 (4th Cir. 1975); *Harkless v. Sweeny Independent School Dist.,* 427 F.2d 319, 324 (5th Cir. 1970).