**Roland VALCOURT, Plaintiff,**

**v.**

**Donald HYLAND et al., Defendants.**

**Civ. A. No. 79–2361–K.**

United States District Court,
D. Massachusetts.

Sept. 4, 1980.

**632**

Richard D. Clarey, Snyder, Tepper & Berlin, Boston, Mass., for plaintiff.

John F. O'Donoghue, Fall River, Mass., for defendants.

### MEMORANDUM

KEETON, District Judge.

#### I.

This action, asserting claims under 42 U.S.C. § 1983 and related statutes, was submitted to a jury on eight special interrogatories. The matters now before the court are plaintiff's various post–verdict motions, including his motion for entry of judgment.

Plaintiff's motions are as follows:

 1. Motion to Name Ralph T. Lepore a Party–Defendant (document # 55, filed 5–2–80);

 2. Plaintiff's Revised Motion for Entry of Judgment (document # 59, filed 5–21–80);[1]

 3. Motion for the Court to Retain Jurisdiction to Enter Further Judgment on Plaintiff's Right to an Award of Attorneys Fees pursuant to 42 U.S.C. § 1988 (document # 56, filed 5–2–80).

#### II.

*Motion to Name Ralph T. Lepore a Party–Defendant*

 Relying on Fed.R.Civ.P. 21,[2] plaintiff has moved after the conclusion of trial "that Ralph T. Lepore be named as a party–Defendant individually and in his official capacity as Chief of Police of the Town of Swansea because his addition as a party–Defendant is reasonably necessary to effectuate appropriate relief to the Plaintiff." Plaintiff has not filed a memorandum of law in support of this motion nor does the motion on its face make clear the basis for plaintiff's contention that Chief Lepore's presence as a defendant "is reasonably necessary to effectuate appropriate relief to the Plaintiff." It would appear that plaintiff seeks to add Chief Lepore as a defend-. ant so that any injunctive decree entered in this case may run against him as well as against the current defendants.[3]

As a threshold matter this motion raises potentially grave due process questions.[4]

---

1. Plaintiff's Revised Motion for Entry of Judgment essentially incorporates plaintiff's prior Motion for Permanent Injunctive Relief (document # 54, filed 5–2–80) and Motion for Affirmative Equitable Relief (document # 58 filed 5–2–80) as well as revising his Motion for Entry of Judgment upon Jury Verdict (document # 57, filed 5–2–80).

2. Fed.R.Civ.P. 21 provides in part as follows: Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

3. For example, Plaintiff's Proposed Form of Judgment for Permanent Injunctive Relief, if entered by the court, would restrain certain actions of Chief Lepore and his successors in office as well as the current individual defendants and their successors in office.

4. Plaintiff does not appear to contemplate affording Chief Lepore a day in court before the entry of an injunctive decree running against

These questions need not be addressed, however, since on the present state of the record plaintiff has not demonstrated any basis for granting this motion. In any event, in light of the court's resolution of the question of appropriate equitable relief, see Parts III through V, *infra*, there would be no reason to allow this motion. Accordingly, the motion is denied.

## III.

*Plaintiff's Revised Motion for Judgment*

Plaintiff seeks a judgment on the verdict of the jury [5] that would:

him, nor can it be said that Chief Lepore had that day in court, at least in his individual capacity, in the trial that has already taken place.

**5.** The verdict of the jury was in answer to Special Interrogatories as follows:

(1) Did the defendants, or any of them, in actions taken after April 7, 1977, under color of law refuse to give fair consideration to Roland Valcourt's application for appointment to the regular police force?

Answer YES or NO. **YES**

If you answer NO to Question 1, do not answer other questions.

If you answer YES to Question 1, answer Questions 2–8.

(2) Did the Town of Swansea have in effect in December, 1977 and thereafter an official policy for appointment to the regular police force under which a qualified applicant had a right to be appointed, as distinguished from a right to be considered for appointment?

Answer YES or NO. **NO**

(3) Was the refusal to give fair consideration to Roland Valcourt's application for appointment to the regular police force taken in retaliation for Valcourt's exercise of his first amendment rights?

Answer YES or NO. **YES**

(4) As to each individual defendant, did he or she participate in the refusal to give fair consideration to Roland Valcourt's application and, if so, did he or she act in reasonable good faith? Beside the name of each defendant answer "Yes, in reasonable good faith," or "Yes, not in reasonable good faith," or "No."

| | ANSWERS |
|---|---|
| Donald Hyland | Yes, not in reasonable good faith |
| Donald LeSage | Yes, not in reasonable good faith |
| Daphne Sears | Yes, not in reasonable good faith |

(5) Were the individual defendants who participated in the refusal to give fair consideration to Roland Valcourt's application acting in a representative capacity so as to fairly represent the official policy of the Town of Swansea?

Answer YES or NO. **YES**

If so, were they, in a representative capacity, then acting in bad faith?

Answer YES or NO. **YES**

(6) Do you find that Roland Valcourt would have been appointed to the regular police force before the present time if defendants had given fair consideration to his application?

(1) order defendants to instate plaintiff to a position as a regular police officer on the Town of Swansea police force, with seniority retroactive to January 2, 1979;

(2) enjoin defendants from, essentially, further retaliating against plaintiff;

(3) award plaintiff $33,400 in compensatory damages [6] and $21,500 in punitive damages.[7]

In the event the court does not order plaintiff instated, plaintiff seeks an additional $20,000 in compensatory damages, which the jury found as the amount re-

Answer YES or NO. **YES**

If so, what amount of money, if paid now in cash, would fairly and reasonably compensate the plaintiff, Roland Valcourt, for any loss of wages and benefits sustained for each of the periods stated below, because of the failure to appoint him? Answer in each blank in dollars or None.

| | |
|---|---|
| For the period up through today | $3,400.00 |
| For the period after today | $20,000.00 |

(7) What amount of money, if paid now in cash, would fairly and reasonably compensate the plaintiff, Roland Valcourt, for any damages, other than loss of wages and benefits, which he has suffered and will suffer because of a refusal to give fair consideration to his application?

Answer in dollars or None. $30,000.00

(8) Do you award punitive damages against the defendants, or any of them, and if so, in what amount or amounts, jointly or separately? Answer YES or NO in the blank at the left of each name. If you answer YES beside one or more names, complete the other blank or blanks applicable under your findings.

**YES** Donald Hyland
**YES** Donald LeSage
**NO** Daphne Sears
**YES** Town of Swansea
 Jointly Liable for $1,000.00

Separately Liable
as follows:
 Donald Hyland for $5,000.00
 Donald LeSage for $ 500.00
 Daphne Sears for $ –
 Town of Swansea for $15,000.00

**6.** Compensatory damages, for which defendants would be jointly and severally liable, would consist of (1) $3400 for wages and benefits lost by plaintiff up to the date of trial through defendants' failure to appoint him to the police force (see Special Interrogatory 6); (2) $30,000 for other damages, in the past and in the future, suffered or to be suffered because of the refusal to give fair consideration to plaintiff's application. (See Special Interrogatory 7.)

**7.** See ' (8) of n. 5, *supra,* for the findings totalling $21,500.

quired to compensate for future lost wages and benefits.

## IV.

### Instatement and Compensatory Damages for Future Lost Wages and Benefits

As the bare language of the statute makes apparent,[8] equitable relief is available in an action under 42 U.S.C. § 1983. See B. Schlei & P. Grossman, Employment Discrimination Law 638–639 (1976). It may be assumed for present purposes that the scope of available equitable relief extends, in property circumstances, to an injunction ordering a defendant employer to hire an applicant who was unconstitutionally denied employment. The decision to grant or deny such relief is to be made—as are decisions regarding equitable relief generally— in the exercise of sound discretion in light of the facts and circumstances of the particular case. Burton v. Cascade School District Union High School No. 5, 512 F.2d 850, 852–853 (9th Cir.), cert. denied, 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975). See generally EEOC v. Kallir, Philips, Ross, Inc., 420 F.Supp. 919, 926 (S.D.N.Y.1976) (Title VII, 42 U.S.C. § 2000e et seq.), aff'd mem., 559 F.2d 1203 (2d Cir.), cert. denied, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); Combes v. Griffin Television, Inc., 421 F.Supp. 841, 846 (W.D.Okl.1976) (Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.). Hyland v. Kenner Products Co., 13 FEP 1309, 11 EPD ¶ 10926 (S.D.Ohio 1976) (Title VII, 42 U.S.C. § 2000e et seq.).

 In the present case, the jury in answers to special interrogatories found that plaintiff had no property right to appointment,[9] but that absent defendants' refusal to give fair consideration to his application for appointment, taken in retaliation for plaintiff's exercise of his First Amendment rights,[10] plaintiff would have been appointed before the date of trial.[11] The only existing employment status of plaintiff with the Town of Swansea police department is his position as a reserve officer. The relief he seeks here is an appointment as a regular officer. This proposed relief, in the nature of instatement, is a more drastic remedy than reinstatement. It involves the creation of a new employment relationship rather than resumption of an old one. In these circumstances, it will be useful to examine precedents as to granting or denying reinstatement. If they disclose valid reasons for denying reinstatement in circumstances otherwise like those of the present case, those reasons would weigh at least as heavily, and perhaps more so, against instatement.

Courts have on occasion denied reinstatement where an employment relationship would be seriously impaired by discord between the parties and cooperation is essential to proper job performance. See, e. g., EEOC v. Kallir, Philips, Ross, Inc., supra (Title VII); Combes v. Griffin Television, Inc., supra (ADEA); Hyland v. Kenner Products Co., supra (Title VII). In the case at bar, evidence at trial suggested the long-standing nature of the controversy between plaintiff and defendant Town of Swansea, the members of its Board of Selectmen, and the Chief of Police. The evidence disclosed the ripening of a contentious spirit on all sides long before this case came to trial. This is the second lawsuit filed by plaintiff against the Town and members of its Board of Selectmen alleging unconstitutional retaliation against plaintiff for his exercise of his First Amendment rights.[12] One can easily imagine that a court order establishing an employment relationship between plaintiff and defendant Town would spawn

---

**8.** 42 U.S.C. § 1983 indicates that every person who engages in the proscribed conduct "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**9.** See Special Interrogatory 2 and answer.

**10.** See Special Interrogatory 3 and answer.

**11.** See Special Interrogatory 6, first question, and answer.

**12.** Civil Action No. 75–5298–C was dismissed on stipulation of the parties that plaintiff be appointed a reserve police officer.

further lawsuits involving charges and counter–charges in relation to such matters as shift assignment, availability of overtime, and promotion. If antagonism that impairs job opportunity and performance is a ground for denying reinstitution of an old employment relationship, surely it is a ground for refusing to establish an employment relationship of a kind that has not existed previously.

Moreover, it is not apparent why relief limited to an award of damages would be so inferior as to justify a holding that it would be an inadequate remedy here. *Cf. Burton v. Cascade School District Union High School No. 5, supra,* at 853 (action under 42 U.S.C. § 1983; "[o]n the facts presented in the case before us, we cannot say that an award limited to monetary damages was inadequate for a wrongful dismissal, under an unconstitutionally vague statute, of a nontenured teacher").[13] Plaintiff argues that he "has devoted the most significant years of his career to his effort to obtain [a position as a] regular police officer" and that if the court does not order his instatement it is highly unlikely that he will ever obtain a position as a regular police officer, either with defendant Town or elsewhere. Plaintiff's Memorandum in Support of His Motions for Equitable Relief at 19–20. Plaintiff does not, however, have a constitutional right to employment as a police officer; he has a constitutional right not to be refused fair consideration of his application for a position as a regular officer in retaliation for exercise of his First Amendment rights. That right having been violated, he is entitled to a fair and effective remedy. It does not follow that he is entitled to the position. Public as well as private interests are at stake. Moreover, a distinction may be observed between a future denial of an appointment as a new or continuing act of retaliation and a future denial on grounds that then–existing antagonisms, growing out of past wrongs, make the development of an effective future relationship impossible. If the antagonisms that have evolved between plaintiff and defendants are now such that it is unrealistic to suppose an effective working relationship is likely to be developed under court–ordered instatement, then a fair award of damages, rather than being an inadequate remedy that triggers the occasion for the equitable relief of an order of instatement, may indeed be the superior remedy. That plaintiff differs with this assessment and presses his claim for instatement is not controlling on the question of adequacy of the remedy of damages for violation of his constitutional rights. Whatever plaintiff's view of the matter may be, it is the responsibility of a court of equity to act not merely with respect for the interests of plaintiff and de-

---

13. The *Burton* court contrasted the nature of the constitutional right at stake in the case before it with the nature of the rights at stake in cases involving racially motivated dismissals or dismissals aimed at punishing the exercise of free speech rights, which it characterized as cases in which courts have ordered reinstatement. 512 F.2d at 853 and n. 12. Subsequently, the Court of Appeals for the 9th Circuit characterized these statements in *Burton* as "recogniz[ing] that reinstatement is usually granted in cases involving discharge 'aimed at punishing the exercise of free speech,'" and, finding "no special circumstances that would justify denying the usual relief" in the record in the case before it, ordered the plaintiff–appellant in that case reinstated to his position as a high school history teacher. *Wagle v. Murray,* 546 F.2d 1329, 1336 (9th Cir.), *vacated and remanded,* 431 U.S. 935, 97 S.Ct. 2645, 53 L.Ed.2d 252 *on remand,* 560 F.2d 401 (1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978). Although the case at bar is similar to *Wagle* and differs from *Burton* in that it involves First Amendment rights, it is distinguishable from *Wagle* in that it involves not a dismissal in retaliation for exercise of free speech rights but a failure to hire in retaliation for exercise of free speech rights. This distinction may be thought a narrow one, given the jury's finding in partial answer to Special Interrogatory 6 that plaintiff would have been appointed to the regular police force before the time of trial if defendants had fairly considered his application, and given that plaintiff already had an employment relationship of sorts with defendant Town because of his service as a reserve police officer. Nevertheless, the court considers it sufficient to take the case outside the rule articulated in *Wagle.* Or, to put it another way, even assuming the *Wagle* rule should apply, the distinction, for the reasons articulated in the text above, may be considered one of the "special circumstances that would justify denying the usual relief."

fendants but also with concern for the public interest, and in doing so to fashion relief that is practical, enforceable, fair and just.

For these reasons, the court finds the proposed remedy of instatement by court order inappropriate in the present case. For the reasons stated immediately below, however, the court also finds it inappropriate merely to enter judgment on the verdict for damages found by the jury, including the damages of $20,000 for loss of future wages and benefits found in partial answer to Special Interrogatory 6.

■ An essential premise of a judgment for the $20,000 damages found for future wages and benefits lost by reason of denial of the appointment of plaintiff to the regular police force is that plaintiff will not be serving on that force and instead will have alternative and less advantageous employment for the remainder of his work life. Thus, if a judgment for such damages is entered unconditionally, when it is satisfied defendants might reasonably contend that, much like the converter who upon payment of the judgment in an action in the nature of trover succeeds to title to the converted chattel,[14] they have bought and fully paid for the right forever to exclude plaintiff from consideration for employment on the police force of the Town of Swansea. The court does not now undertake to determine whether this potential argument would be meritorious. It is sufficient for present purposes to observe that the potential implications of entering judgment unconditionally upon this $20,000 jury finding go beyond those of the more typical judgment for money damages.

A second matter of concern with respect to the complex relationship between the award of damages and the possibility of future instatement of plaintiff as a regular police officer of the Town of Swansea is that if any practical possibility remains for developing an effective working relationship in the future between plaintiff and the Town of Swansea (including appropriate officials of the town), an equitable decree so designed as to leave the parties free to develop that relationship would better serve the mutual interests of the parties and the public than a judgment rigidly fixing the rights of the parties on an implicit premise that no such working relationship can ever be developed.

With these considerations in view, rather than unconditionally entering a judgment that includes either $20,000 damages for future loss of wages and benefits or instatement of plaintiff as a police officer and nonliability of defendants for this $20,000 in damages, the court proposes to enter a judgment containing provisions of the general nature explained immediately below. Before entry of judgment, however, the court will set this case for a hearing at which the parties, if they wish to do so, may show cause why such provisions should not be included or why modifications should be made. The proposed provisions are as follows:

(1) A schedule of installments, the first payable within 60 days after the entry of judgment and additional payments at six months intervals thereafter, in amounts fixed by agreement of the parties or determined by the court if the parties cannot agree, will be substituted for the jury finding of $20,000 damages for future loss of wages and benefits. If the parties cannot agree on this schedule, the court will invite written submissions regarding factors that the court should consider in fixing a schedule of payments that is a fair equivalent in value of a lump sum of $20,000 paid on the date of the verdict.

(2) By filing an election to do so within 21 days after entry of judgment, defendants may tender to plaintiff an appointment as a regular officer on the police force of the Town of Swansea, to be effective not later than 180 days after entry of judgment. If such a tender is made and, within 42 days after entry of judgment, is accepted by plaintiff by written notice filed with the

---

14. *See, e. g.*, W. Prosser, Torts § 15 (4th ed. 1971); Restatement (Second) of Torts § 222A, *comment c* (1965).

clerk, the acceptance of the appointment by plaintiff will constitute a waiver of all but the first installment of the schedule of payments in lieu of the $20,000 damages for future loss of wages and benefits.

(3) If no appointment is tendered within 21 days in accordance with paragraph (2), plaintiff may within 42 days after entry of judgment file an election in writing to accept lump sum payment of $20,000 60 days after entry of judgment, together with interest at 8 per cent per annum from the date of the verdict, as compensation for damages for loss of future wages and benefits. Satisfaction of this judgment by defendants will discharge all defendants in this case, and their successors as officers and representatives of the Town of Swansea, from any further obligation to consider plaintiff as an applicant, now or hereafter, for employment by the Town of Swansea.

(4) If no appointment is effected in accordance with paragraph (2) and plaintiff files no election for lump sum compensation in accordance with paragraph (3), installments will continue to be payable as due under the schedule fixed in accordance with paragraph (1). However, if at any time the Town of Swansea tenders and plaintiff accepts an appointment as a regular police officer of the town, plaintiff's acceptance of such a tender will constitute a waiver of all remaining installments not then having come due.

## V.

### Other Equitable Relief

Plaintiff seeks a permanent injunction along the following lines:

> IT IS ORDERED AND ADJUDGED that the defendant, Town of Swansea, and the Defendants, Donald Hyland, Donald LeSage, and Daphne Sears, and their successors in office, and the Swansea Chief of Police, Ralph T. Lepore, and his successors in office, and those acting in concert with these Defendants and persons, are hereby permanently enjoined from engaging in any conduct or actions or failures to act toward Roland Valcourt

taken in retaliation for his exercise of constitutionally protected conduct and his commencement of this litigation, which treat Roland Valcourt disparately from any other police officer in the employment of the Town of Swansea or which cause Roland Valcourt to be subject to public ridicule or contempt and which concern the present and future employment of Roland Valcourt as a reserve and/or regular police officer in Swansea or which concern his employment as a police officer in any other community.

For the reasons stated in Part II, *supra,* this relief cannot be granted insofar as it seeks to enjoin the Chief of Police, Ralph T. Lepore. Also, this relief is inconsistent with the remedial framework adopted and proposed in Part IV, *supra.* Moreover, the particular order proposed is ambiguous in respects that would sharply increase the probability of further controversy over its proper interpretation. The request is therefore denied.

## VI.

### Damages

#### A. Punitive Damages

In answering Special Interrogatory 8 the jury found defendant Town of Swansea separately liable for $15,000 in punitive damages and jointly liable with defendants Hyland and LeSage for $1000 in punitive damages. These answers raise the question whether a municipality can be liable for punitive damages in an action brought under 42 U.S.C. § 1983.

In a recent decision, the Court of Appeals for the First Circuit touched upon the question but did not resolve it. *Fact Concerts, Inc. v. City of Newport,,* 626 F.2d 1060 (1st Cir., 1980). There the question arose in the context of a challenge to the district court's having given an instruction allowing the jury to award punitive damages against a defendant municipality. Defendants had failed to object to the giving of the instruction below, so that the issue facing the court on appeal was whether giving the instruction constituted "plain error." The

court concluded that it did not. In reaching this conclusion, the court emphasized and summarized the state of flux in this area:

This is an area of the law in which there has been and apparently still is, considerable movement. We have held on two occasions that punitive damages are available against section 1983 defendants when there are aggravating circumstances. *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 121 (1st Cir. 1977) (bad faith); *Caperci v. Huntoon*, 397 F.2d 799, 801 (1st Cir.), *cert. denied*, 393 U.S. 940 [89 S.Ct. 299, 21 L.Ed.2d 276] (1968) (unwarranted invasion of privacy). Although the Supreme Court has never fully addressed the question, it has edged toward a similar conclusion. *Carlson v. Green* [446 U.S. 14, 17, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15] (1980) (dictum); *Carey v. Piphus*, 435 U.S. 247, 254–[257 and] n. 11 [98 S.Ct. 1042, 1047–1049 and n. 11, 55 L.Ed.2d 252] (1978). When our rule on this point is viewed in light of the Supreme Court's determination that municipalities are "persons" within the ambit of section 1983, *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 [98 S.Ct. 2018, 56 L.Ed.2d 611] (1978), there arises a distinct possibility that municipalities, like all other persons subject to suit under section 1983, may be liable for punitive damages in the proper circumstances. There certainly is no imposing body of law to the contrary.

*Id.*, at 1067.

Although the question of municipal liability for punitive damages may not technically be one of the availability of an "immunity," it is sufficiently analogous to an immunity question that precedents dealing with immunities available under § 1983 can be profitably looked to for guidance.

■ *Owen v. City of Independence*, 445 U.S. 622, 635, 100 S.Ct. 1398, 1407, 63 L.Ed.2d 673 (1980), indicates that

the question of the scope of a municipality's immunity from liability under § 1983 is essentially one of statutory construction.... By its terms, § 1983 "creates a species of tort liability that on its face admits of no immunities." [Citation.] Its language is absolute and unqualified; no mention is made of any privileges, immunities, or defenses that may be asserted.

Nevertheless, it has been established "that § 1983 is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976).

The doctrine of municipal nonliability for punitive damages is well established at common law and well supported in policy considerations. One noted commentator summarizes the law in this area as follows:

In the overwhelming majority of jurisdictions which have considered the question, it is now firmly established that exemplary or punitive damages are not recoverable [against a municipality] unless expressly authorized by statute. In denying punitive or exemplary damages, most courts have reasoned that while the public is benefited by the exaction of such damages against a malicious, willful or reckless wrongdoer, the benefit does not follow when the public itself is penalized for the acts of its agents over which it is able to exercise but little direct control. As otherwise expressed by a leading decision on the issue, "to permit such [punitive] damages against a public corporation is to contravene public policy since the parties who must bear the burden of the punishment are the taxpayers and citizens who constitute the very persons who as a group are to benefit from the public example which the granting of such damages is supposed to make of a wrongdoer." Furthermore, some courts have reasoned that the theory that punitive damages serve as a deterrent to others adds little justification for the award against a municipality. "It is assumed that public officials will do their duty, and if discipline of a wrongdoing municipal employee is indicated, appropriate measures are available through the electorate, or by superior officials responsible to the electorate, without recourse to punitive awards through the courts."

18 McQuillin, Law of Municipal Corporations, § 53.18a (3rd ed. 1977). This doctrine of municipal nonliability may be applied in the present context if its underlying rationale is compatible with the purposes of § 1983. *Cf. Owen v. City of Independence, supra,* 445 U.S. at 640, 100 S.Ct. at 1410.

■ Punitive damages serve two purposes in general: (1) punishment of a wrongdoer for outrageous conduct; and (2) deterrence, of the wrongdoer and others, from similar conduct in the future. Restatement (Second) of Torts § 908 (1979).

The existence of a rough criminal analogue to § 1983, 18 U.S.C. § 242, suggests that punishment of the wrongdoer, if a purpose at all, is not one of the primary purposes of § 1983. Moreover, even if punishment of wrongdoers generally should be regarded as a subsidiary purpose of § 1983, that purpose is not so central to the rationale of the statute as to override the public interests underlying the doctrine of municipal nonliability for punitive damages. Thus, insofar as a purpose of an award of punitive damages is to punish the wrongdoer, the doctrine of municipal nonliability for punitive damages is compatible with the purposes of § 1983.

■ Precedent does indicate, however, that deterrence is a central purpose of § 1983. *E. g., Owen v. City of Independence, supra,* at 651, 100 S.Ct. at 1416 ("§ 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations as well"). Nevertheless, "[t]o the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in an award of compensatory damages." *Carey v. Piphus, supra,* 435 U.S. at 256–257, 98 S.Ct. at 1048.[15] Indeed, part of the rationale of the Supreme Court in rejecting the availability of a qualified good–faith immunity for municipalities in § 1983 damages actions was that municipal liability for compensatory damages would deter future violations and create an incentive structure for municipalities "to institute internal rules and programs designed to minimize the likelihood" of future violations. *Owen v. City of Independence, supra,* 445 U.S. at 652, 100 S.Ct. at 1416. Thus, with respect to the deterrent function of punitive damages, the doctrine of municipal nonliability for punitive damages is compatible with the purposes of § 1983, since the deterrent function of § 1983 is sufficiently served in the context of municipal liability by an award of compensatory damages.

The above arguments support the conclusion that punitive damages may not be awarded against a defendant municipality in an action under 42 U.S.C. § 1983, and at least one court has so held. *Edmonds v. Dillin,* 485 F.Supp. 722, 729–730 (N.D.Ohio 1980). *But see Cook v. City of Miami,* 464 F.Supp. 737 (S.D.Fla.1979) (denying motion of defendants, apparently including defendant city, to strike demand for punitive damages from complaint alleging claims asserted under, *inter alia,* 42 U.S.C. §§ 1983 and 1985; no discussion of question of availability of punitive damages against a municipality, defendants' argument apparently having been that punitive damages were not available against any defendants in civil rights action). The court need not determine in this case, however, whether there might ever arise circumstances in which an award of punitive damages against a municipality in an action under § 1983 would be justified. Such circumstances were not proved in this case.

Proof at trial establishing that municipal officials have acted in violation of legal obligations of the municipality to the complaining party, where the evidence does not support a suggestion that the officials were serving the wishes and interests of citizens

15. In a footnote to this passage the court added:

This is not to say that exemplary or punitive damages might not be awarded in a proper case under § 1983 with the specific purpose of deterring or punishing violations of constitutional rights.
435 U.S. at 257 n. 11, 98 S.Ct. at 1049.

of the municipality in acting as they did, demonstrates not only that the wrongdoing of the officials has victimized plaintiff but also that it has victimized the citizens of the municipality. They, as taxpayers, must bear the economic burden of the resulting judgment for compensatory damages. In the present case, those damages include a substantial award for noneconomic elements of plaintiff's cause of action, as to which it is inconceivable that the citizens of the community could have realized any advantage to offset in any degree the economic loss they sustain through liability for the award. When the conduct of the officials is so egregious as to support punitive damages against them individually, imposing punitive damages on the municipality as well victimizes tax–paying citizens still more severely. Here no evidence was presented that would justify imposing the added burden of liability for punitive damages upon citizens of a municipality who have necessarily suffered the burden of liability for compensatory damages when the officials have ill–served the municipal interests by violating a municipal duty to another.

Punitive damages are allowed against the individual wrongdoers, however. *Fact Concerts, Inc. v. City of Newport, supra.* Punitive damages as found by the jury will be allowed as follows:

(a) $1000 jointly against defendants Hyland and LeSage;

(b) $5000 separately against defendant Hyland;

(c) $500 separately against defendant LeSage.

### B. *Compensatory Damages*

Plaintiff is entitled to judgment for compensatory damages of $33,400, consisting of the $3400 for past lost wages and benefits found by the jury in partial answer to Special Interrogatory 6 and the $30,000 found by the jury in answer to Special Interrogatory 7. *Cf. Brule v. Southworth,* 611 F.2d

16. 42 U.S.C. § 1988 provides in relevant part as follows:

In any action or proceeding to enforce a provision of sections 1981, 1983, 1982, 1985,

406 (1st Cir. 1979). Provisions regarding the $20,000 found in partial answer to Special Interrogatory 6 for wages and benefits that will be lost in the future are discussed in Part IV, *supra.*

## VII.

### *Attorney's Fees*

Under 42 U.S.C. § 1988,[16] this court is authorized to award attorney's fees to plaintiff, a prevailing party in an action under 42 U.S.C. § 1983. The standards for awarding attorney's fees under § 1988 are generally the same as those under the attorney's fees provisions of the Civil Rights Act of 1964. *Perez v. Rodriguez Bou,* 575 F.2d 21 (1st Cir. 1978); *Sargeant v. Sharp,* 579 F.2d 645 (1st Cir. 1978). A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975); *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 67–69, 100 S.Ct. 2024, 2033, 64 L.Ed.2d 723 (1980).

Defendants cite *Zarcone v. Perry,* 581 F.2d 1039 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), and *Buxton v. Patel,* 595 F.2d 1182 (9th Cir. 1979), and apparently rely on them for the proposition that the *Newman* rule as just articulated is not applicable in this case. *Zarcone* and *Buxton* can be read to articulate a different rule, less restrictive of a district court's exercise of its discretion than the *Newman* rule, to be applied in damages actions. Such a distinction, however, involves a rather strained reading of the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, which amended § 1988 to provide for awards of attorney's fees. The Senate Report on the Act contains the following statements:

and 1986 of this title ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

It is intended that the standards for awarding fees be generally the same as under the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

Nevertheless, the distinction can be harmonized with the precise holding of *Newman*, since *Newman* was an action for injunctive relief, and the full statement from *Newman*, part of which is quoted in the Senate Report, is "It follows that one who succeeds in obtaining *an injunction* under that Title [Title II of the Civil Rights Act of 1964] should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (Emphasis added.) On the other hand, the distinction is at odds with the spirit if not the precise holdings of decisions by the Court of Appeals for the First Circuit, *see, e. g., Perez v. University of Puerto Rico*, 600 F.2d 1 (1st Cir. 1979) (attorney's fee in context of award of nominal damages), which decisions this court is, of course, bound to follow. For these reasons, the court holds that the *Newman* rule that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust" is applicable in this action.[17]

No special circumstances for denying plaintiff an award of attorney's fees are apparent here. Defendants have pointed to none. The mere fact that plaintiff's action may not result in direct benefits to others, either the public at large or an otherwise identifiable group, but only in benefits to himself, is not a special circumstance justifying a departure from the ordinary rule. *Perez v. University of Puerto Rico, supra.*

Accordingly, a hearing will be scheduled for the purpose of determining the amount that it would be reasonable to award plaintiff as an attorney's fee. The attention of the parties is directed to *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), and its progeny and to *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), relative to the factors to be considered by a district court in arriving at a reasonable fees award. Plaintiff should be prepared to offer evidence in support of any fees claimed, and defendants may offer evidence if they wish to do so. Such evidence may be offered by affidavit unless an oral evidentiary hearing is requested by one of the parties.

## VIII.
### Further Proceedings

A hearing is scheduled for October 28, 1980 at 3:00 p. m. for the purposes of

(1) allowing the parties to show cause why the judgment entered in this case should not contain provisions of the general nature of those proposed in Part IV of this memorandum or why those proposed provisions should be modified;

(2) determining the amount it would be reasonable to award plaintiff as an attorney's fee.[*]

---

17. Although the fact that plaintiff recovers damages is not a basis for denying an award of attorney's fees, it may be a factor to be considered in determining the amount of the award. *Cf. Perez v. University of Puerto Rico, supra*, at 2.

* The hearing scheduled for October 28, 1980 having been continued at the request of the parties, they filed on November 21, 1980 an Offer and Acceptance of Judgment, under the terms of which judgment was entered as follows:

Judgment for the Plaintiff against Defendants Town of Swansea, Donald Hyland, Donald LeSage and Daphne Sears, jointly and severally, in the amount of $53,400.00 actual damages and in the amount of $31,600.00 for attorneys fees, interest and costs. Satisfaction of this judgment by defendants will discharge all defendants in this case, and their successors as officers and representatives of the Town of Swansea, from any further obligation to consider Plaintiff as an applicant, now or hereafter, for employment by the Town of Swansea as a regular police officer.