Nermin D. LAVAPIES, M.D.,
Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., et al.,
Defendants–Appellees.

No. 88–4034.

United States Court of Appeals,
Sixth Circuit.

Argued July 24, 1989.

Decided Aug. 22, 1989.

Robert M. Gippin (argued), Buckingham, Doolittle & Burroughs, Akron, Ohio, for plaintiff-appellant.

Robert Hanson, Frances L. Pergericht (argued), Dept. of Health and Human Services, Office of the General Counsel, Region V, Chicago, Ill., Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, Richard Olderman, U.S. Dept. of Justice, Appellate Section, Washington, D.C., for defendants-appellees.

Before MERRITT and NELSON, Circuit Judges; and BROWN, Senior Circuit Judge.

MERRITT, Circuit Judge.

In this Medicare exclusion case arising under § 1156 of the Social Security Act, 42 U.S.C. § 1320c–5, the plaintiff-physician seeks an injunction setting aside her one-year suspension from participation in Medicare, Title XVIII. She challenges the District Court's dismissal of her case on grounds that she failed to exhaust her administrative remedies, and its finding that none of her challenges presented "colorable constitutional claims." Her primary claim is that the administrative process by which she has been excluded denies her due process. 687 F.Supp. 1193 (S.D.Ohio 1988). Specifically, she asserts two constitutional claims:

1) She has a right to a full pre-exclusion hearing, or at minimum a face-to-face encounter with the ultimate decision maker, especially on the question of whether she was unable or unwilling to meet her § 1156 obligations.

2) She was excluded under a standard that was unconstitutionally vague.

She also asserts two statutory claims:

3) She was excluded under a standard set forth in a procedural manual not adopted under the Administrative Procedure Act.

4) The statutory and regulatory scheme for peer review creates and permits biased decision-making.

Upon review of the entire record, the District Court denied the physician's request for an injunction and dismissed the case, finding that the plaintiff had not exhausted her administrative remedies and had presented no cognizable constitutional claim which would create an exception to the exhaustion requirement.

I.

Nermin Lavapies is a family practice physician in Belmont County, Ohio, a county designated as a rural health manpower shortage area ("HMSA") in the areas of podiatry and psychiatry only. Over 40% of her patients are eligible for Medicare. In 1984, Peer Review Systems, Inc., whose function it is to determine whether a health care petitioner has violated her statutory obligations established under the Medicare scheme, identified several quality of care problems in Dr. Lavapies' cases and considered sanctioning her. After a meeting in November 1985, Dr. Lavapies, represented by counsel, and six physicians agreed to a corrective action plan in February 1986 which included among other requirements the demand that she see her patients in a timely fashion. PRS continued to monitor Dr. Lavapies' care. On March 19, 1987, PRS notified Dr. Lavapies that in five cases she had violated her obligation under § 1156 of the Social Security Act to provide medical services which meet professionally recognized standards. Dr. Lavapies' counsel did respond to the PRS letter; and both Dr. Lavapies and her counsel met with PRS physicians on June 4, 1987.

On September 11, 1987, PRS notified Dr. Lavapies that she had failed to comply with her § 1156 obligations; one violation was gross and flagrant and the other two were substantial. They recommended to the Office of Inspector General that she be suspended for two years from participation in the Medicare Program. PRS provided Dr. Lavapies with a copy of the material upon which they based their decision, copies of which were also forwarded to the OIG. This material included the PRS rationale for its recommended exclusion that Dr. Lavapies had failed to personally evaluate a patient until seventeen hours after admission, a criticism she was supposed to remedy under her 1986 corrective action plan. Additionally, PRS specifically mentioned

that Dr. Lavapies had been under a corrective action plan since February 1986, concerning previous sanction activity involving quality of care violations identified during the 1984 to 1986 PRS contract period. They went on to state that she exhibited a pattern of inappropriate care that did not meet professionally recognized standards. PRS also indicated that Dr. Lavapies' exclusion would not adversely affect Medicare beneficiaries because of the availability of an ample number of family practitioners in the surrounding metropolitan area. PRS informed her that under the Medicare statute she could submit additional written information to the OIG which might affect their exclusion recommendation.

Dr. Lavapies availed herself of this administrative process. She submitted through counsel and by affidavit a detailed rebuttal of the PRS criticisms. On January 11, 1988, the OIG informed Dr. Lavapies that she was excluded from the Medicare Program for one year. In his notification, the OIG specifically mentioned the receipt of Dr. Lavapies' rebuttal material. He relied on the fact that Dr. Lavapies had "grossly and flagrantly violated [her] obligation to provide care that meets professionally recognized standards of quality," and had "demonstrated an inability and unwillingness substantially to comply with the obligations imposed on [her] by section 1156(a)...." The OIG went on to find support for the latter statement in Dr. Lavapies' history of quality care problems and in her failure to follow her corrective action plan. Specifically, the OIG noted that Dr. Lavapies did not see a patient for seventeen hours after admission and issued orders for the patient's care without a personal evaluation. Dr. Lavapies concedes that, when she filed suit in federal District Court, she had not exhausted the administrative review procedures set out in 42 U.S.C. § 1320c–5(b)(4). These procedures provide a post-exclusion hearing before an administrative law judge and appeal to the Secretary's Appeal Council. Judicial review of that decision is then available.

## II.

The Supreme Court recognized in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), an exception to the statutory requirement of exhaustion of administrative remedies. In order to fall within this exception a plaintiff must: (1) raise a colorable constitutional claim collateral to her substantive claim of entitlement; (2) show that she would be irreparably harmed by enforcement of the exhaustion requirement; and (3) show that the purposes of exhaustion would not be served by requiring further administrative procedures. *Id.* at 329–31, 96 S.Ct. at 900–01; *see also Bowen v. City of New York*, 476 U.S. 467, 484, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986). Here the plaintiff has failed to demonstrate valid claims of constitutional deprivation under the Due Process Clause.

■ *Pre-exclusion Hearing.* Although this is a case of first impression in this circuit, six of our sister circuits have considered the question of whether due process requires that a physician receiving Medicare payments be given a pre-exclusion evidentiary hearing before the OIG. They have been unanimous in their conclusion that it does not. We concur. *See Thorbus v. Bowen*, 848 F.2d 901 (8th Cir. 1988); *Doyle v. Secretary of Health and Human Services*, 848 F.2d 296 (1st Cir. 1988); *Varandani v. Bowen*, 824 F.2d 307 (4th Cir.1987), *cert. dismissed*, —— U.S. ——, 108 S.Ct. 1000, 98 L.Ed.2d 968 (1988); *Cassim v. Bowen*, 824 F.2d 791 (9th Cir. 1987); *Koerpel v. Heckler*, 797 F.2d 858 (10th Cir.1986); *Ritter v. Cohen*, 797 F.2d 119 (3d Cir.1986).

■ Lavapies also argues that she did not get minimal due process because she was never on notice that she had violated her corrective action plan nor was she able to fully respond to the OIG on the issue of her unwillingness or inability to follow this plan. The evidence belies Dr. Lavapies' position. A reading of the transcript of Lavapies' 1985 hearing makes it clear that she was aware of the need to evaluate promptly newly admitted patients in person. Her inability to correct this behavior was a part of the PRS's recommendation, and her own extensive point-by-point response to the PRS materials submitted to the OIG further undermines her position that she had deficient notice and lacked the

opportunity to respond adequately to PRS criticism.

■ *Vagueness.* Lavapies also claims that the term "gross and flagrant" used in the Medicare statute is unconstitutionally vague. 42 U.S.C. § 1320c–5(b)(1)(B). The regulations define a "gross and flagrant" violation as

a violation of an obligation [which] has occurred in one or more instances which presents an imminent danger to the health, safety or well-being of a Medicare beneficiary or places the beneficiary unnecessarily in high-risk situations.

42 C.F.R. § 1004.1(b) (1986), *formerly codified at* 42 C.F.R. § 474.0(b) (1985). The First and Eighth Circuits have found that the statutory term at issue is not unconstitutionally vague. We concur. *See Doyle,* 848 F.2d at 301; *Varandani,* 824 F.2d at 312 ("[t]he definition of adequate medical care cannot be boiled down to a precise mathematical formula").

■ *Exhaustion of Administrative Remedies.* The Supreme Court in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), pointed to the need for exhaustion of administrative remedies:

Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Id.* at 765, 95 S.Ct. at 2467. The following nonconstitutional claims must fail because plaintiff has failed to exhaust administrative remedies:

(1) Dr. Lavapies claims that § 4095 of P.L. 100–203 entitles her to a pre-exclusion hearing because she allegedly is located in a rural health manpower shortage area. Alternatively, she argues that while she is "located" in Belmont County, she provides services "located" in Harrison and Monroe Counties which have been designated as health manpower shortage areas in the specialty of primary care.

(2) Dr. Lavapies challenges the section of the PRS manual in which a phrase is added to the term "gross and flagrant violation" in 42 C.F.R. § 1004.1. She claims the statement was not adopted pursuant to the rulemaking procedures of the Administrative Procedure Act.

(3) Finally, Lavapies contends that the reviewing physicians have a potentially direct financial stake in their decisions to exclude. She contends that PRS was under a contractual pressure to meet a "quota" of sanctions.

Because we find that none of Dr. Lavapies' claims present constitutional violations, and because the remainder of her claims must be exhausted administratively, her contention that she is entitled to a preliminary injunction fails.

Accordingly, the decision of the District Court declining to issue an injunction is affirmed.