**FORT BERTHOLD LAND AND LIVE-STOCK ASSOCIATION and its members, including Edward J. Danks, Jr., Morgan Fettig, Tom Breuer, Casey Federicks, Claryca Mandan, Arnie and Ramona Guimont, Todd Hall, Edwin A. Hall, Tex G. Hall, Pete Fredericks,**

**Dennis Huber, Mike Huber, Melvin J. Johnson, Ethan Hall, Gabriel L. Fettig, Howard Fettig, Shane Johnson, Edward S. Danks, Sr., Keith Mandan, Shasta Mandan, Forest Mandan, and Leo N. Baker, Plaintiffs,**

v.

**David ANDERSON, Assistant Secretary–Indian Affairs, United States Department of the Interior, William Benjamin, Great Plains Regional Director of the Bureau of Indian Affairs, and Perry Baker, Superintendent of the Fort Berthold Agency, Defendants.**

No. A4–04–109.

United States District Court,
D. North Dakota,
Northwestern Division.

March 22, 2005.

Sarah M. Vogel, Beth A. Baumstark, Sarah Vogel Law Firm P.C., Bismarck, ND, for Plaintiffs.

David L. Peterson, Bismarck, ND, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is the Plaintiffs' Motion for Summary Judgment filed on November 22, 2004, and the Defendants' Motion to Dismiss filed on December 12, 2004. The Plaintiffs oppose the motion. For the following reasons, the Defendants' Motion to Dismiss is granted and the Plaintiffs' Motion for Summary Judgment is denied.

### I. BACKGROUND

The named plaintiffs are enrolled members of the Three Affiliated Tribes and are ranchers on the Fort Berthold Reservation in North Dakota. The Plaintiffs belong to the Forth Berthold Land and Livestock Association (Association). The Plaintiffs, and other ranchers who belong to the Association, have one or more grazing permits on specific grazing units within the Fort Berthold Reservation for a five-year period commencing December 1, 1999, and ending November 30, 2004. The Defendants are officers and employees of the Department of Interior and the Bureau of Indian Affairs (BIA) who are charged with administering the grazing permit program. Complaint, ¶¶ 1–2.

On or about December 27, 1999, the Regional Director of the Great Plains Region of the BIA advised the Plaintiffs that the grazing rates in the permit period commencing on December 1, 1999, and ending November 30, 2004, would be increased from $4.30 per animal unit month to $6.92 per animal unit. The Plaintiffs and the Association appealed the Regional Director's increase to the Interior Board of Indian Appeals (IBIA). Complaint, ¶¶ 8–9.

On or about May 2000, the BIA issued permits for the five-year period in question. The Plaintiffs' grazing permits read in relevant part as follows:

> By authority of law and under the regulations (25 CFR 166) prescribed by the Secretary of the Interior, [name of rancher], is hereby granted permission to hold and graze the livestock on the Trust Indian and Government-owned lands in the foregoing range unit of the said Reservation, a schedule of which is attached and made a part of this permit, for a period beginning December 1, 1999, and terminating not later than November 30, 2004.

> .    .    .    .    .
>
> SPECIAL PERMIT REQUIRE-MENTS AND PROVISIONS
>
> .    .    .    .    .
>
> 5. The grazing rate on allotted land shall be reviewed annually by the Bureau of Indian Affairs, and if any adjustment is needed, the Regional Director will make such adjustment by September 15.
>
> 6. The grazing rates established by the Great Plains Regional Director for the 2000 grazing season that are used to determine grazing fees for land covered by this permit have been appealed to the Interior Board of Indian Appeals and cannot be implemented at this time. Grazing fees for this permit were calculated using the 1999 grazing rates. If

the 2000 grazing rates are upheld by the "IBIA", you will be required to pay the difference between the two rates.

Plaintiffs' Ex. 1, unnumbered pp. 2–3.

On December 20, 2000, the IBIA issued a decision on the rate increase appeal. *Fort Berthold Land and Livestock Assoc. v. Great Plains Regional Dir., Bureau of Indian Affairs,* 35 IBIA 266 (2000). *See* Plaintiffs' Ex. 2. The IBIA vacated the decision to increase the grazing rates and remanded the matter back to the Regional Director. The IBIA concluded that the Regional Director had "failed to show that she based her grazing rental rate adjustments on appraisal data" as required by 25 C.F.R. § 166.13(a) and provisions in the Bureau of Indian Affairs Manual. 35 IBIA 266, 273–74. The IBIA included instructions to the Regional Director to be followed upon remand:

> On remand, the Regional Director shall first determine whether the MOA [Memorandum of Agreement] discussed above is still in effect and whether any other consultation duties are applicable to this matter. The Board urges that, if at all possible, a valuation methodology, including a dispute resolution mechanism, be worked out among the interested parties. If these efforts fail, and the Regional Director issues a new decision under the present regulations, she shall show that she based her decision on appraisal data.

*Id.* at 278.

On December 16, 2003, the Regional Director wrote a letter to all permit holders which stated as follows:

> On December 20, 2000, the Interior Board of Indian Appeals (IBIA) remanded a September 22, 1999, decision by the Director of the Aberdeen Area (now the Great Plains Region) for reconsideration. After receiving the remand, we consulted our legal advisors and

gathered additional information. We now offer the following decision.

.    .    .    .    .

I am affirming the original decision to set the minimum grazing rental rate for allotted lands at $6.92 an AUM for the permit period of December 1, 1999, to November 30, 2004 ... [and] reversing my decision to establish a summer seasonal grazing rate of $11.45 an AUM.

.    .    .    .    .

I am directing the Superintendent of the Fort Berthold Agency to bill all permittees the difference between the old grazing rental rate ($4.30 an AUM) and the new grazing rental rate ($6.92 an AUM) for each year covered by the grazing permits now in effect at the Fort Berthold Agency.[1]

See Plaintiffs' Ex., 3. Again, the Plaintiffs and the Association appealed the decision to the Interior Board of Indian Appeals (IBIA). Complaint, ¶ 15.

On June 30, 2004, the Regional Director wrote a letter to the IBIA requesting that the matter be remanded back to him for further consideration and compliance with the IBIA's instructions in *Fort Berthold Land and Livestock Assoc. v. Great Plains Regional Dir., Bureau of Indian Affairs,* 35 IBIA 266 (2000). In closing, the Regional Director wrote that "[t]he Appellee recognizes this process has been long for all parties involved, therefore the Appellee will make issuing a new decision a priority upon remand." *See* Plaintiffs' Ex. 4. The Association and other ranchers oppose the Regional Directors request for a remand.

In an order dated July 8, 2004, the IBIA granted the Regional Director's request

for remand. At the outset, the IBIA framed the issue on appeal as follows:

These consolidated appeals seek review of a December 16, 2003, decision of the Acting Great Plains Regional Director, Bureau of Indian Affairs (Regional Director), concerning the minimum grazing rental rate for allotted lands on the Fort Berthold Reservation. In *Fort Berthold Land and Livestock Association v. Great Plains Regional Director,* 35 IBIA 266 (2000), the Board of Indian Appeals (Board) vacated and remanded an earlier decision of the Regional Director increasing the minimum annual grazing rental rate for the Reservation. The Regional Director's December 16, 2003, decision was issued in response to that remand. For the reasons discussed below, the Board grants a request from the Regional Director to vacate the December 16, 2003, decision and remand the matter for further consideration.

*Guimont v. Acting Great Plains Regional Director, Bureau of Indian Affairs,* 40 IBIA 47, 47–48 (2004). Upon remand, "[t]he Regional Director shall consider the arguments raised by Appellants in their notices of appeal and their objection to a remand, with respect to a rental rate adjustment." *Id.* at 48. The IBIA also ordered the Regional Director to "afford Appellants a reasonable opportunity to present any additional arguments or evidence, so that the issue may be fully considered and addressed in any new decision issued by the Regional Director." *Id.*

In a letter dated July 28, 2004, the Regional Director offered the appellants and interested parties an opportunity to submit

---

1. The retroactive application is pursuant to special permit provision six which, as previously noted, reads as follows:

The grazing rates established by the Great Plains Regional Director for the 2000 grazing season that are used to determine grazing fees for land covered by this permit have been appealed to the Interior Board of Indian Appeals and cannot be implemented at this time. Grazing fees for this permit were calculated using the 1999 grazing rates. If the 2000 grazing rates are upheld by the "IBIA", you will be required to pay the difference between the two rates.

additional arguments and evidence for consideration in accordance with the IBIA's decision. The additional material was to be submitted to the Regional Director by September 1, 2004. *See* Plaintiffs' Ex. 6.

On September 9, 2004, the Association and its members filed the present action in Federal District Court in the District of North Dakota "seek[ing] a declaratory judgment as to whether Defendants may impose a retroactive grazing rate increase for the years of 2000 through 2004." Complaint, ¶ 1. The Plaintiffs are asking this Court to issue a declaratory judgment finding that (1) the BIA may not increase the grazing rates charged to the Plaintiffs under the permit terms; (2) that the BIA lost any right to modify the grazing rate by failure to immediately implement the IBIA's decision dated December 20, 2000; and (3) that the Plaintiffs are eligible to apply for Equal Access to Justice fees. On November 22, 2004, the Plaintiffs' filed a Motion for Summary Judgment. In response, the Defendants' filed a motion to dismiss which is presently before the Court.

## II. *LEGAL DISCUSSION* [2]

█ The Defendants seek dismissal under Rule 12 of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. The Plaintiffs action is filed under the judicial review provision of the Administrative Procedure Act (APA), 5 U.S.C. §§ 702–706 and federal question jurisdiction pursuant to 28 U.S.C. § 1331. Complaint, ¶¶ 4–5. The Eighth Circuit has held "that federal district courts do have subject matter jurisdiction under 28 U.S.C.

§ 1331 to review, pursuant to the APA," actions of the BIA. *Runs After v. United States*, 766 F.2d 347, 351 (8th Cir.1985). "Although the APA may not be used as an independent grant of subject matter jurisdiction to review agency actions, the Supreme Court stated in *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), that 28 U.S.C. § 1331 confers general jurisdiction on federal courts to review federal agency actions 'subject only to preclusion-of-review statutes.'" *Goodface v. Grassrope*, 708 F.2d 335, 338 (8th Cir.1983). The appropriate inquiry for the Court is whether there are any "preclusion-of-review statutes" in place that would warrant dismissal.

Under § 10(a) of the APA, "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, *is entitled to judicial relief thereof*." 5 U.S.C. § 702 (emphasis added). Although § 10(a) provides the general right to judicial review of agency actions under the APA, § 10(c) establishes when such review is available. When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is "final for the purposes of this section" and therefore "subject to judicial review" under the first sentence.

*Darby v. Cisneros*, 509 U.S. 137, 146, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). To that end, there are specific provisions governing BIA appeals.

---

**2.** The Plaintiffs initially contend that the Defendants' motion should be dismissed for failure to comply with Local Rule 7.1(B)(1) which provides that "[t]he party moving for dispositive relief must submit with the brief a separate, short and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried." It is clear that the Defendants' Motion to Dismiss is characterized as a dispositive motion, and no formal statement of material facts was submitted to the Court. *See* Local Rule 7.1(A). However, the Court finds that the Defendants' failure to file such a statement does not, in this case, warrant dismissal.

Since 1975, regulations governing challenges to decisions of the Bureau of Indian Affairs have required an administrative appeal from most BIA decisions before judicial review of such decisions can be obtained. *See, e.g.,* 25 C.F.R. § 2.3(b) (1988); 40 Fed.Reg. 20, 625–626 (1975). In 1989, the regulations requiring an administrative appeal were revised without changing the appeal requirement. *See* 54 Fed.Reg. 6478, 7666 (1989). The provision requiring an appeal now appears at 25 C.F.R. § 2.6(a) (1992).[3] These regulatory revisions also eliminated an intermediate appeal to the Commissioner of Indian Affairs and provided for direct review of BIA Area Director decisions by the Interior Board of Indian Appeals. *See* 54 Fed.Reg. 6478 (1989); *compare* 25 C.F.R. § 2.3(a) (1988) *with id.* § 2.4(e) (1992). At the same time, the rules governing appeals to the IBIA were amended to "ensure compatibility between those regulations and regulations of the Bureau of Indian Affairs." 54 Fed.Reg. 6483 (1989). In particular, one amendment reiterated the need for an appeal to the IBIA before the decision could be reviewed judicially. *See id.* at 6486; *compare* 43 C.F.R. § 4.314(a) (1991) *with id.* (1988).[4]

*Stock West Corp. v. Lujan,* 982 F.2d 1389, 1393 (9th Cir.1993) (original footnotes omitted) (footnotes added).

■ "The doctrine of exhaustion of administrative remedies is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). It is well-established that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper,* 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *see Harris v. P.A.M. Transport, Inc.,* 339 F.3d 635, 638 (8th Cir.2003) (requiring the same).

The exhaustion requirement serves four primary purposes. First, it carries out the congressional purpose in granting authority to the agency by discouraging the "frequent and deliberate flouting of administrative processes [that] could ... encourag[e] people to ignore its procedures." Second, it protects agency autonomy by allowing the agency the opportunity in the first instance to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors. Third, it aids judicial review by allowing the parties and the agency to develop the facts of the case in the administrative proceeding. Fourth, it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by

---

**3.** Section 2.6(a) reads as follows:

No decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704, unless when an appeal is filed, the official to whom the appeal is made determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately.

25 C.F.R. § 2.6(a).

**4.** Currently, section 4.314(a) provides as follows:

No decision of an administrative law judge, Indian probate judge, or BIA official that at the time of its rendition is subject to appeal to the Board, will be considered final so as to constitute agency action subject to judicial review under 5 U.S.C. § 704, unless it has been made effective pending a decision on appeal by order of the Board.

43 C.F.R. § 4.314.

perhaps avoiding the necessity of any judicial involvement at all, if the parties successfully vindicate their claims before the agency. *Bisson,* 646 F.Supp. at 706; *see also McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Without an exhaustion requirement, people would be encouraged to ignore the administrative dispute resolution structure, destroying its utility. *Andrade v. Lauer,* 729 F.2d 1475, 1484. *Peters v. Union Pacific R. Co.,* 80 F.3d 257, 263 (8th Cir.1996). "As a general rule, judicial interference should be withheld until the administrative process has run its course." *Burlington Northern, Inc. v. Chicago and North Western Transp. Co.,* 649 F.2d 556, 558–59 (8th Cir.1981) (citing *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). Specifically, the Eighth Circuit has cautioned "that declaratory actions should not be used to circumvent administrative procedures." *Id.* at 559 (citing *Weinberger v. Bentex Pharmaceuticals, Inc.,* 412 U.S. 645, 652–53, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973); *FPC v. Louisiana Power & Light Co.,* 406 U.S. 621, 647, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); *Whitney National Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 421, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965)).

■ However, the rule requiring exhaustion of administrative remedies "is not a rule to be applied woodenly." *West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979); *see Glover v. United States,* 286 F.2d 84, 90 (8th Cir.1961) ("We adhere to the general rule as to the necessity for exhaustion of administrative remedies in order to obtain judicial review, and are of the opinion that such a rule is generally applicable and usually necessary. However, we are of the view that such general rule is not absolute, inflexible and without exception, but that it is to be relaxed only under extremely exceptional and unusual circumstances."). "Except in those cases where exhaustion of administrative remedies is specifically required by statute, administrative remedies need not be pursued if the litigant's interests in judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *West,* 611 F.2d 710, 715 (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *United States v. Newmann,* 478 F.2d 829, 831 (8th Cir.1973)) (internal citations omitted). "An exception to the exhaustion of administrative remedies requirement lies in situations where the claimant: (1) raises a colorable constitutional claim collateral to his substantive claim of entitlement; (2) shows that irreparable harm would result from exhaustion; and (3) shows that the purposes of exhaustion would not be served by requiring further administrative procedures." *Anderson v. Sullivan,* 959 F.2d 690, 693 (8th Cir.1992) (citing *Thorbus v. Bowen,* 848 F.2d 901, 903 (8th Cir.1988) (citing *Mathews v. Eldridge,* 424 U.S. 319, 329–31, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)); *Lavapies v. Bowen,* 883 F.2d 465, 467 (6th Cir.1989)).

■ The Plaintiffs contend that there is no statute that requires the Fort Berthold Land and Livestock Association to exhaust any administrative remedies before seeking declaratory and injunctive relief. However, the Plaintiffs basis for jurisdiction in this matter is the judicial review provision of the APA which demands "final agency action" prior to review. BIA regulations which appear at 25 C.F.R. § 2.6(a) and 43 C.F.R. § 4.314(a) set forth what will amount to a "final agency action" for purposes of APA review. Numerous courts, including the Eighth Circuit, have declined to review BIA decisions for failure to exhaust administrative remedies. *See Blackbear v. Norton,* No. 02–4230, 2004 WL 407037, *193 (10th Cir. Mar.5,

2004) ("Neither those plaintiffs whose appeal to the IBIA is pending nor those who chose not to appeal can point to a final agency action upon which to base their [APA] claim."); *Klaudt v. United States Dep't of Interior*, 990 F.2d 409, 411–12 (8th Cir.1993) ("The federal regulations provide that administrative procedures must be followed before seeking relief in the court system. There are clearly detailed administrative processes and remedies set forth in 25 C.F.R. Part 2 and 43 C.F.R. Part 4."); *Joint Bd. of Control v. United States*, 862 F.2d 195, 199–201 (9th Cir.1988); *Faras v. Hodel*, 845 F.2d 202, 204 (9th Cir. 1988); *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677–78 (9th Cir.1988); *Runs After v. United States*, 766 F.2d 347, 352 (8th Cir.1985).

The Plaintiffs contend that they have already exhausted administrative remedies as evidenced by their two prior appeals to the IBIA. As previously discussed, the Plaintiffs appealed both of the Regional Director's decisions to increase grazing rates to the IBIA. In *Fort Berthold Land and Livestock Association v. Great Plains Regional Director*, 35 IBIA 266 (2000), the IBIA vacated and remanded the decision back to the Regional Director. Again, in *Guimont v. Acting Great Plains Regional Director, Bureau of Indian Affairs*, 40 IBIA 47, 47–48 (2004), the decision was remanded back to the Regional Director. To date, the Regional Director has yet to render a decision on remand.

In summary, it is clear that this matter is still pending with the BIA and remains subject to administrative adjudication by the IBIA. It is also clear that only final agency actions are reviewable. 5 U.S.C. § 704; *Franklin v. Massachusetts*, 505 U.S. 788, 796, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) (requirement for final agency action is jurisdictional). Additionally, under the terms of the APA, judicial review is only available to "a person suffering

legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The Plaintiffs have not yet suffered a legal wrong, nor have they been adversely affected or aggrieved at this stage of the dispute, they are merely anticipating an adverse decision.

Finally, the Plaintiffs assert that under the circumstances they should not be required to exhaust administrative appeals. The Court disagrees. None of the exceptions to the requirement that administrative remedies be exhausted, as outlined in *Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir.1992), apply. As a result, the Plaintiffs claim is subject to dismissal as a result of the failure to exhaust administrative remedies.

The Court is sympathetic to the Plaintiffs and the uncertainty they have lived with concerning the grazing rates to be charged by the BIA from December 1999—November 2004. The delays in this case on the part of the BIA are unreasonable and unwarranted. Neither the equities nor the law appear to favor the BIA in this prolonged dispute over grazing rates. *See Danks v. Fields*, 696 F.2d 572 (8th Cir.1982). Nevertheless, the Court must await a final decision by the Regional Director, subject to review by the Interior Board of Indian Appeals, before judicial review at the federal level is warranted. The Court is precluded from taking judicial action at this stage because the matter is still currently pending before the BIA Regional Director. Simply stated, there must be an appeal of the BIA's final decision and an exhaustion of administrative remedies before judicial review is available at the federal level.

### III. *CONCLUSION*

The Court **GRANTS** the Defendants' Motion to Dismiss (Docket No. 12), **DE-**

**NIES** the Plaintiffs' Motion for Summary Judgment and Injunction (Docket No. 7), and **DENIES** Plaintiffs' Motion for Oral Argument as moot (Docket No. 20).

**IT IS SO ORDERED.**