2006 DSD 18

## CROW CREEK SIOUX TRIBE, Plaintiff,

v.

## BUREAU OF INDIAN AFFAIRS, W. Patrick Ragsdale, director, Bureau of Indian Affairs, Chris Chaney, director, Office of Law Enforcement Services, Michael Yellow, District One Correctional Program Specialist, Defendants.

No. CIV. 06–3004.

United States District Court, D. South Dakota, Central Division.

Nov. 17, 2006.

portion of the County's roads. The roads are clearly safer in the treated areas.

Terry L. Pechota, Attorney at Law, Rapid City, SD, for Plaintiffs.

Cheryl Schrempp Dupris, U.S. Attorney's Office, Pierre, SD, for Defendants.

## OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

KORNMANN, District Judge.

### INTRODUCTION

[¶ 1] Plaintiff, Crow Creek Sioux Tribe ("Tribe"), instituted this suit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, seeking judicial review of the Bureau of Indian Affairs–Office of Law Enforcement Services' ("BIA–OLES") decision to close the Crow Creek Detention Center ("CCDC"). The Tribe also seeks an injunction requiring BIA–OLES to reopen CCDC. The Defendants filed a motion (Doc. 7) to dismiss, contending that (1) there is no final agency action within the scope of the APA to be reviewed; (2) there is no independent source of jurisdiction; (3) the plaintiff lacks standing; and (4) the decision to close CCDC is not judicially reviewable because it is committed to agency discretion.

### FACTUAL BACKGROUND

[¶ 2] BIA–OLES operates 19 BIA detention facilities located in various districts across the United States and provides technical assistance to tribes in all areas of correctional management. It does so under the general authority of the Snyder Act, 25 U.S.C. § 13, and the authority of the Indian Law Enforcement Reform Act ("ILERA"), 25 U.S.C. §§ 2801–2809.

[¶ 3] CCDC was a 12–bed BIA owned and operated detention facility built in 1985 and located in Fort Thompson, South Dakota. Its mission was to serve the law enforcement needs of both the Lower Brule Sioux and Crow Creek Sioux Tribes. Recently, from the BIA's prospective, CCDC's ability to meet this objective was questionable.

[¶ 4] Between September 2003 and 2004, the Department of the Interior's Office of Inspector General ("OIG") conducted an assessment of Indian Country detention facilities and issued a report entitled "Neither Safe Nor Secure, An Assessment of Indian Detention Facilities." The OIG report found that a majority of the BIA's detention facilities had serious safety, security, and maintenance issues. In response to this report and other factors, effective September 2005, BIA–OLES adopted a new policy to close previously used detention centers currently in its facility inventory that were scheduled to be replaced by new facilities. The rationale was that the current facilities were beyond their useful lives and were no longer able to fulfill BIA–OLES' mission.

[¶ 5] On January 17, 2006, BIA–OLES informed all interested parties that CCDC would be closed effective January 19, 2006. The replacement facility for CCDC is a 60–bed detention facility located at Lower Brule, South Dakota. The Lower Brule facility opened in June of 2006. The communities of Lower Brule and Crow Creek are approximately eight miles apart.

[¶ 6] Although the Tribe received notice of BIA–OLES' decision to close CCDC, they did not file any administrative appeal with the Director of the BIA, the Assistant Secretary–Indian Affairs, or with the Interior Board of Indian Appeals ("IBIA"). Instead, they instituted this action in Federal Court.

### DISCUSSION

#### 1. RULE 12(B)(I) STANDARD OF REVIEW

[¶ 7] "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." *Marine Equipment Management Co. v. United States,* 4

F.3d 643, 646 (8th Cir.1993) (*citing Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), (*citing in turn Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803))). "The threshold inquiry in every federal case is whether the court has jurisdiction" and the Eighth Circuit has "admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases." *Rock Island Millwork Co. v. Hedges–Gough Lumber Co.*, 337 F.2d 24, 26–27 (8th Cir.1964), and *Sanders v. Clemco Industries*, 823 F.2d 214, 216 (8th Cir. 1987).

[¶ 8] A motion to dismiss for lack of subject matter jurisdiction challenges the court's power to hear the case. *Mortensen v. First Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir.1977). Jurisdictional issues are for the court to decide and the court has broad power to decide its own right to hear a case. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990), (*quoting Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)). Because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the onset. *Osborn*, at 729.

■ [¶ 9] "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). "The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir.1993). *See also Osborn*, 918 F.2d at 729, fn. 4 (*citing Land v. Dollar*, 330 U.S. 731, 735 & fn. 4, 67 S.Ct. 1009, 1011 & fn. 4, 91 L.Ed. 1209 (1947), and

*Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir.1980)). Such consideration does not convert a motion to dismiss into a motion for summary judgment. *Deuser v. Vecera*, 139 F.3d 1190, 1191 fn. 3 (8th Cir.1998), *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993). Plaintiff has the burden of establishing that jurisdiction exists. It is not the responsibility of defendants to prove otherwise. *Titus*, 4 F.3d at 593 fn. 1.

[¶ 10] The Eighth Circuit, in *Osborn*, delineated the standard of review for motions to dismiss under Fed.R.Civ.P. 12(b)(1):

[H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

918 F.2d at 730 (*quoting Mortensen v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d at 891). However, courts have also recognized that the jurisdictional issue and substantive issues can be so intertwined that a full trial on the merits may be necessary to resolve the issue. *Id.* (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). *See also Whalen v. United States*, 29 F.Supp.2d 1093, 1095–96 (D.S.D.1998). The parties have submitted exhibits in support of and in resistance to the motion to dismiss and the court will consider such

evidence as it relates to the jurisdictional challenge.

## 2. JUDICIAL REVIEW OF BIA ADMINISTRATIVE ACTIONS

■ [¶ 11] Federal district courts have subject matter jurisdiction under 28 U.S.C. § 1331 to review, pursuant to the APA, BIA actions. *Runs After v. United States*, 766 F.2d 347, 351 (8th Cir.1985). However, the APA may not be used as an independent grant of subject matter jurisdiction to review agency actions. The Supreme Court stated in *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), that 28 U.S.C. § 1331 confers general jurisdiction on federal courts to review federal agency actions "subject only to preclusion-of-review statutes." *Goodface v. Grassrope*, 708 F.2d 335, 338 (8th Cir.1983). Accordingly, the Court's inquiry turns to whether there are any "preclusion-of-review statutes" in place that would warrant dismissal of this action.

> Under § 10(a) of the APA, "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof." 5 U.S.C. § 702. While § 10(a) provides a general right to judicial review of agency actions under the APA, § 10(c) establishes when such review is available. When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is "final for the purposes of this section" and therefore "subject to judicial review" under the first sentence.

*Darby v. Cisneros*, 509 U.S. 137, 146, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). With respect to this objective, there are specific regulations governing BIA appeals.

[¶ 12] Since 1975, regulations governing challenges to BIA decisions have required an administrative appeal from most BIA decisions before judicial review can be obtained. *Fort Berthold Land and Livestock Ass'n. v. Anderson*, 361 F.Supp.2d 1045, 1050 (D.N.D.2005). BIA regulations at 25 C.F.R. § 2.6(a) and 43 C.F.R. § 4314(a) delineate the standard for "final agency action" for purposes of APA review. 25 C.F.R. § 2.6(a) provides:

> No decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704, unless when an appeal is filed, the official to whom the appeal is made determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately.

[¶ 13] 43 C.F.R. § 4.314(a) provides, *inter alia:*

> No decision of a ... BIA official that at the time of its rendition is subject to appeal to the Board, will be considered final so as to constitute agency action subject to judicial review under 5 U.S.C. § 704, unless it has been made effective pending a decision on appeal by order of the Board.

Consequently, the plaintiff's jurisdictional claim under 28 U.S.C. § 1331 is subject to preclusion of review statutes. Thus, the critical question becomes whether the plaintiff has exhausted all administrative remedies proscribed by statute and BIA rules.

## 3. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ [¶ 14] "It is well settled that administrative remedies must be fully exhausted before jurisdiction vests in the federal courts." *Edwards v. Department of the Army*, 708 F.2d 1344, 1346 (8th Cir.1983). Exhaustion is a very important concept in

our jurisprudence, with deep roots in the principles of federalism and comity. *See, e.g., Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). "There is a 'long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Until a plaintiff has pursued available administrative relief, 'suit is premature and must be dismissed.' *Reiter v. Cooper,* 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)." *Harris v. P.A.M. Transport, Inc.,* 339 F.3d 635, 637 (8th Cir.2003) (*citing Reiter v. Cooper,* 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)).

[¶ 15] "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Cornish v. Blakey,* 336 F.3d 749, 753 (8th Cir.2003) (*quoting McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). Agency authority is promoted through avoiding premature interruption of the administrative process by allowing an agency to apply its special expertise, to discover and correct errors, and to develop a factual background on the issue in question. *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). Further, requiring exhaustion discourages the "frequent and deliberate flouting of the administrative processes." *Id.* Judicial economy is promoted by allowing the parties and the agency to develop the facts of the case in the administrative proceeding. *Andrade v. Lauer,* 729 F.2d 1475, 1484 (D.C.Cir.1984); *U.S. v. Bisson,* 646 F.Supp. 701, 706 (D.S.D.1986). Additionally, judicial economy is promoted by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial

involvement at all, if the parties successfully vindicate their claims before the agency. *Id.*

■■ [¶ 16] As previously mentioned, the APA allows for judicial review only as to final agency actions. 5 U.S.C. § 704; *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990). An administrative action is final if it marks the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature—and it determines rights or obligations from which legal consequences will flow. *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997); *Sierra Club v. U.S. Army Corps of Engineers,* 446 F.3d 808, 813 (8th Cir.2006).

■ [¶ 17] Nonetheless, the rule requiring exhaustion of administrative remedies "is not a rule to be applied woodenly." *West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979); *see Glover v. United States,* 286 F.2d 84, 90 (8th Cir.1961) ("We adhere to the general rule as to the necessity for exhaustion of administrative remedies in order to obtain judicial review, and are of the opinion that *such a rule is generally applicable and usually necessary.* However, we are of the view that such general rule is not absolute, inflexible and without exception, but that *it is to be relaxed only under extremely exceptional and unusual circumstances.*") (emphasis added). "Except in those cases where exhaustion of administrative remedies is specifically required by statute, administrative remedies need not be pursued if the litigant's interests in judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *West,* 611 F.2d 710, 715 (*citing Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *United States v. New-*

*mann,* 478 F.2d 829, 831 (8th Cir.1973)) (internal citations omitted). Hence, a plaintiff's failure to fulfill a statutory requirement does not necessarily deprive a federal court of subject matter jurisdiction. *Chelette v. Harris,* 229 F.3d 684, 686 (8th Cir.2000).

[¶ 18] In *Weinberger v. Salfi,* the Supreme Court distinguished between provisions that merely codify the requirement that administrative remedies must be exhausted and those that impose jurisdictional requirements. 422 U.S. at 757, 95 S.Ct. 2457. The latter must contain "sweeping and direct" statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim. *See Id.* "An administrative exhaustion requirement is jurisdictional only if it goes beyond the language necessary to codify an exhaustion requirement." *Chelette* 229 F.3d at 687 (*Citing Wright v. Morris,* 111 F.3d 414, 420–21 (6th Cir. 1997)).

[¶ 19] Numerous courts, including the Eighth Circuit, have declined to review BIA decisions where there was failure to exhaust administrative remedies. *See Blackbear v. Norton,* No. 02–4230, 93 Fed. Appx. 192, 193 (10th Cir.2004) ("Neither those plaintiffs whose appeal to the IBIA is pending nor those who chose not to appeal can point to a final agency action upon which to base their [APA] claim."); *Klaudt v. United States Dep't of Interior,* 990 F.2d 409, 411–12 (8th Cir.1993) ("The federal regulations provide that administrative procedures must be followed before seeking relief in the court system. There are clearly detailed administrative processes and remedies set forth in 25 C.F.R.

Part 2 and 43 C.F.R. Part 4."); *Joint Bd. of Control v. United States,* 862 F.2d 195, 199–201 (9th Cir.1988); *Faras v. Hodel,* 845 F.2d 202, 204 (9th Cir.1988); *White Mountain Apache Tribe v. Hodel,* 840 F.2d 675, 677–78 (9th Cir.1988); and *Runs After v. United States,* 766 F.2d 347, 352 (8th Cir.1985).

[¶ 20] Plaintiff did not appeal the BIA's decision to the Regional Director, which is in turn subject to review by the IBIA. Plaintiff asserts that, under the circumstances, it should not be required to exhaust administrative appeals. The Court disagrees. The jurisdictional requirement that the Court can only review final agency actions is clear. As a result, plaintiff's claim is subject to dismissal because of the failure to exhaust administrative remedies.

[¶ 21] The Court is sympathetic to the plaintiff's plight. Every community suffers when a business liquidates or relocates, or when government employment or services are reduced. This suffering is even more pronounced on South Dakota Indian Reservations where economic opportunity is limited and unemployment is high. In fact, South Dakota Counties, in Indian Country, have some of the lowest per capita incomes in the United States.[1] South Dakota tribes expend a great deal of energy attempting to diversify and expand economic opportunities for their members. However, an appeal of the BIA's final decision and an exhaustion of administrative remedies would be required before judicial review is available.

[¶ 22] In conclusion, the Court does not reach the merits of the defendants' alternative arguments for dismissal, since the

---

1. 2000 census data reports the following: Crow Creek Reservation has a per capita income of $5,272; Lower Brule Reservation has a per capita income of $7,020; Rosebud Reservation has a per capita income of $7,279; and, Cheyenne River Reservation has a per capita income of $8,710. *See http://www. census.gov/main/www/cen2000.html* (GCT–P14: Income and Poverty in 1999, Data Set: Census 2000 Summary File 3 (SF 3)).

Court finds that the plaintiff failed to exhaust administrative remedies. Accordingly, this action should be dismissed.

### ORDER

[¶ 23] Based upon thè foregoing.

[¶ 24] IT IS ORDERED that the motion to dismiss (Doc. 7) is granted. Plaintiffs complaint is dismissed without prejudice.